304 So.2d 438 (1974)
Gilbert SENS, As Trustee, Petitioner,
v.
SLAVIA, INC., et al., Respondents.
No. 45508.
Supreme Court of Florida.
November 13, 1974.
Rehearing Denied December 30, 1974.
*439 Irving B. Levenson of Sibley, Giblin, Levenson & Ward, Miami Beach, for petitioner.
Joe N. Unger, Miami Beach, and Fink & Syna, Miami, for respondents.
ERVIN, Justice.
We review by conflict certiorari a per curiam without written opinion decision of the District Court of Appeal, Third District, in Sens, as Trustee v. Slavia, Inc., 292 So.2d 627.
This lawsuit involves the right to the surplus fund resulting from a mortgage foreclosure sale as between the holder of the equity of redemption at the time of the sale and certain unsecured creditors (primarily tenants who had made advance payments of rents) of the former owner of the foreclosed property who had no legally recognized lien status which would give them a legal basis upon which to claim the surplus.
In order to understand the case the factual situation has to be set forth in considerable detail.
The Petitioner, Gilbert Sens, as Trustee, was the owner and holder of the equity of redemption at the time of the foreclosure sale. The active or litigating Respondents are the unsecured tenant-creditors of the defaulting mortgagor, the named Respondent Slavia, Inc.
The subject property is the old Wofford Beach Hotel located in Miami Beach, Florida. The property was owned by Slavia, Inc., a Florida corporation, whose operating officer was one Sima Kvajic who on January 8, 1973 abandoned not only the corporation and his duties to it, but the subject property as well.
Ten days after the mentioned abandonment and on January 18, 1973, Five Points Furniture, Inc., a Florida corporation, and others stated this litigation in the trial court by filing the complaint to foreclose the second and third mortgages on the *440 property. In that complaint, in addition to naming Slavia, Inc., the mortgagor and owner of the property, as a defendant, some 97 individual tenants were named as defendants. Paragraph 11 of the complaint states:
"All of the other named Defendants are tenants in said premises and may claim some right of possession to the demised premises by virtue of either written or oral leases made between them and the Defendant, SLAVIA, INC., which tenancy and right of possession is inferior and subordinate to the rights of the Plaintiffs."
The relief prayed for in the complaint was that typically sought in a mortgage foreclosure; namely, that the estate, interest or claim in and to the subject property of each and all of the defendants, as well as anyone claiming by, through or under them, be forever barred and foreclosed. A notice of lis pendens was duly filed and named all of the tenants.
On January 22, 1973, the Department of Business Regulation, Division of Hotels and Restaurants, issued its "Order of Suspension," thereby suspending the license for the operation of the Wofford Beach Hotel on the ground that the same was a danger to the safety and health of tenants and guests. That order provides that the premises be immediately vacated and not reoccupied by tenants and guests until the suspension is lifted.
On February 2, 1973 application for appointment of a receiver was filed to preserve and protect the property. On that same day the court appointed a receiver and, inter alia, directed the receiver to gain entry into the premises and conduct an inspection in conjunction with the proper governmental officials and determine the condition of the property and report the same to the court.
On February 12, 1973 the defendant-tenants (Respondents) filed their answer and cross-claim for damages. The answer is a general denial coupled with the assertion that they are tenants of the mortgagor and that their claims are not inferior or subordinate to the rights of the foreclosing mortgagee. The cross-claim of the tenants claimed no lien or vested right to the property but simply claimed damages for breach of contract by Slavia, Inc., the defaulting mortgagor. The cross-claim admits that the tenants (Respondents) are no longer in possession and have no possessory rights but allege that:
"On or about January 20, 1973 the Defendant-tenants were constructively evicted after Defendants SLAVIA, INC., KVAJIC abandoned possession and utilities and services could no longer be maintained causing damages to the Defendant-tenants in the total sum of $100,000 apportioned as their interests may appear."
On February 12, 1973 the plaintiff (the foreclosing mortgagee) moved for a default and the same was entered against Slavia, Inc. However, the following day Slavia, Inc. moved for an extension of time within which to plead and asserted that both it and the premises had been abandoned by Sima Kvajic, and that George Kvajic, a previously inactive vice-president of the corporation, had authority to represent the corporation, employed an attorney, and that it would be in the best interest of the corporation, its junior lienors, as well as its unsecured creditors, that the heretofore "rudderless" corporation be afforded an opportunity not only to defend but seek a private sale of the property. The motion was granted on March 12, 1973, the order stating that the junior lienors and the unsecured creditors of the corporation would do better if Slavia, Inc. (the defaulting mortgagor) could negotiate a private sale.
On March 15, 1973, the plaintiff (the foreclosing mortgagee) filed its motion for summary judgment asserting, inter alia, that none of the defendants had any right, title or interest in the subject property *441 sought to be foreclosed that was superior to the plaintiff's and that the existing cross-claims between various tenants and the defaulting mortgagor in no way affected the plaintiff's right to a final judgment of foreclosure.
On April 11, 1973 the court entered the "Final Judgment of Foreclosure." That final judgment was never appealed. In that judgment the court found that it had jurisdiction of the parties and the cause, and the plaintiff was entitled to foreclosure, as a matter of law, and was due on its defaulted mortgage the sum of $101,634.95. Paragraph 4 of the judgment expressly finds that the "Plaintiffs hold a lien for the total sum superior to any claim or estate of all Defendants." (Emphasis supplied.) The court set the mortgage foreclosure sale for May 3, 1973 in the event the judgment remained unpaid. The final judgment also provided:
"On filing the certificate of title Defendants and all persons claiming under or against them since the filing of the notice of lis pendens are foreclosed of all estate or claim in the property and the purchaser at the sale shall be let into possession of the property."
The mortgage foreclosure sale was duly noticed and took place, as scheduled, on May 3, 1973.
The day prior to the foreclosure sale (May 2, 1973) Samuel Skliar, as Trustee, was substituted as the party-plaintiff, having acquired that position by assignment from the plaintiff-mortgagees. Skliar was the successful bidder at the sale for a price of $165,000 above the first mortgage. Skliar, as Trustee, purchased the property at judicial sale free and clear of all liens except the first mortgage, and given credit for the plaintiff-mortgagees' position, Skliar's bid of $165,000, subject as stated to the first mortgage, resulted in a surplus fund of $66,276.99. A certificate of title was issued to Skliar dated May 15, 1973.
In February, 1973 the inactive vice-president of Slavia, Inc. came forward and sought to defend the corporation and obtained extra time to plead and search for a private sale of the property in the best interest of both the corporation and its unsecured creditors. This is where the Petitioner, Gilbert Sens, enters the scene of this litigation. Sens never having known or done business with Slavia, Inc. or any of its principals, made the highest private offer to purchase the property of those with whom Slavia negotiated for a private sale of the property as authorized by the court. When Sens became interested in the property, the building had been padlocked by the City of Miami Beach and the defendant-tenants (Respondents) were completely out of possession, and the receiver had already reported to the court that the property could not feasibly be restored. Sens' interest in the property was for land development. In exchange for his $850,000 purchase price he wanted good title to the property, free and clear of all liens and encumbrances, save and except for the first mortgage. The deposit receipt agreement between Slavia, Inc. and Sens dated March 13, 1973 provides in its concluding paragraph the following:
"It is the firm understanding of the parties that the Purchaser is to receive a good and marketable title and possession free and clear of all claims, liens, mortgages, other than the first Mortgage, and the Purchaser and or his attorney shall be the sole persons who have a right to determine that the requirements of this paragraph have been fully met."
Sens' purchase of the property from Slavia, Inc. was closed on April 24, 1973, with prorations as of May 1, 1973. The warranty deed from Slavia, Inc. to Sens dated April 24, 1973, was recorded on May 2, 1973. The closing statement establishes that Sens paid the purchase price of $850,000 to buy the property free and clear of all liens except for the first mortgage. The "balance cash to close" in the amount *442 of $157,526.79 was escrowed with Slavia's lawyer, pursuant to the escrow letter dated April 24, 1973, which required the escrow agent, inter alia, to:
"Satisfy any and all claims of individuals which may affect title to the real property."
It appears Sens bought the property for $850,000 subject to the first mortgage and escrowed $157,500 for payment of Slavia's debts, including all liens but for the first mortgage and the unsecured debts of the corporation. Because Sens wanted and paid to have the property free and clear of all liens except for the first mortgage, he was advised by his lawyer to take title to the fee in his own name, as trustee, and a separate assignment of the second and third mortgages under foreclosure in the name of Samuel Skliar, as Trustee, thereby avoiding a merger of those interests, and permitting Skliar to conclude the foreclosure proceeding and clearing the title to the property. Skliar was substituted as plaintiff in the place and stead of the original mortgagees and he, with Sens' money, purchased the property at the foreclosure sale.
Thereafter, Sens, the owner of the equity of redemption at the time of the foreclosure sale, applied to the court for payment over to him of the surplus fund that belonged to him.
The trial court refused to permit Sens to recover the surplus fund of $66,276.99 based upon "equitable claim" thereto of defendant-tenants. The trial court found:
"GILBERT SENS, as Trustee, became SLAVIA, INC.'s successor in interest and purchased the premises subject to the claims of the tenants. It appears that said surplus funds are the only substantial funds or assets from which the tenants may be able to collect their claims asserted herein.
"The Court concludes, as a matter of law, that the surplus funds resulting from the foreclosure sale are not refundable at this time to the movant, as the owner of the equity of redemption at the time of the foreclosure sale, but are to be held in the Registry of the Court subject to the provable claims of the tenants."
This order was appealed to the District Court of Appeal, Third District, and affirmed per curiam without opinion, 292 So.2d 627.
From the above recitation of the record proper situation in the trial court, we agree conflict of decisions exists as to this cause.
The Petitioner, Sens, relies for conflict upon Rosen v. Dorn-Kothe, 126 Fla. 717, 171 So. 646 (1936); Meyer v. Bricklayers, Masons & Plasters Union, Local No. 7, 144 Fla. 401, 198 So. 78 (1940), and East Coast Stores v. Cuthbert, 101 Fla. 25, 133 So. 863 (1931).
In the Rosen case it was said:
"... one claiming a surplus or the right to share in a surplus resulting from a sale under foreclosure must either own the equity of redemption at the time of the sale or must be one then holding a lien or vested right in the property." 171 So. at 648. (Emphasis supplied.)
In that case the Rosens sought participation in a surplus fund resulting from a mortgage foreclosure sale. They based their claim as valid assignees of the contract purchaser. The contract provided for a purchase price (in excess of the amount of the first mortgage indebtedness) and that the purchasers would assume the first mortgage. Relevant to this court's determination that the Rosens were entitled to a reversal of the denial of their claim, was an allegation that the contract sellers were a conduit through which title to the lands were held. On these facts the court found that the Rosens had the requisite "vested right" in the property which entitled them to participate in the surplus. Petitioner here urges that because he was the owner of the equity redemption at the time of the *443 foreclosure sale, the decision denying him access to the surplus fund conflicts with Rosen. Further, Petitioner urges the respondents (tenants) have no vested right nor are they in anywise lien holders which would entitle them to the surplus.
Meyer, supra, was a suit to foreclose materialmen's liens against defendant titleholder. Foreclosure sale was ordered. The defendant assigned his interest in any surplus fund that might result to a third party. Thereafter, the sale was consummated and a surplus fund resulted. Defendant's assignee claimed a right to the fund. Upon these facts this Court concluded that when the foreclosure sale was made, "... that sale closed all equity of redemption in the property then sold ..." 198 So. at 79. And it followed that because title to the property was vested in defendant at the time of assignment, his assignee had a legal right to any surplus resulting from the sale.
Petitioner urges that the finding below that he was owner of the equity of redemption at the time of the sale places his case within the confines of Meyer.
Petitioner also contends that the tenants can assert no equitable or legal interest as they were out of possession before the sale of the hotel property to him was consummated and that the Third District Court's affirmance bestowing lien status upon them clearly conflicts with Rosen and Meyer.
In Cuthbert, supra, plaintiffs sued defendant to collect unpaid rent alleged due by virtue of the defendant's taking over the assets of a defunct corporation. This Court reversed the judgment for plaintiffs after jury verdict on the basis that since there was no privity of contract or estate between defendant and the defunct corporation, the defendant was not liable for rent expense incurred by the defunct corporation because defendant did not assume liability therefor by purchase of the assets.
Petitioner contends that the rule of law enunciated in Cuthbert is that mere acquisition of property from a corporation generally does not make the buyer liable for the corporation's debts to unsecured creditors. He urges that sub judice the tenants' claims were properly one in contract against the defaulting mortgagor and not against the foreclosed property or the resulting surplus fund. We agree.
In agreeing with Petitioner we have not overlokeed Respondent tenants' contentions. They cite from Tuttle v. Ehrehart, 102 Fla. 1129, 137 So. 245, 246, the general principle:
"... It may also be regarded as settled that a court of equity sitting to distribute an excess brought into the custody of the court, such as proceeds from a foreclosure sale, has full and complete jurisdiction to determine all justiciable rights made necessary to be determined, in order to fix the priorities of claimants... ."
They contend that "traditional equitable doctrines" give Respondent tenants priority over the surplus funds remaining from the sale at foreclosure, where the tenants had pending before the chancellor a motion to impose an equitable lien  and that Sens knew of tenants' claims when he purchased the property and mortgages and that there was no other source from which the tenants could be paid  that is to say, be refunded the advance rents they had paid for rental space in the hotel.
Respondents cite cases to the general effect a court of equity out of general considerations of right and justice as applied to the particular parties and their dealings can declare an equitable lien.
We are unable to find any authority in law or equity supporting the claims of Respondent tenants for an equitable lien upon the surplus under the particular circumstances of this case. There is nothing in the record showing Sens, as purchaser, stepped in the shoes of the mortgagor or titleholder, either legally or equitably; nor is there any evidence of collusion or conspiracy indicating that Sens acquired the *444 legal title, i.e, the equity of redemption for the purpose of aiding the landlord in defeating the tenants' claims.
As between the tenants on the one hand and Sens on the other, there was no equitable estoppel of Sens' right as succeeding titleholder to the foreclosure sale surplus. The surplus funds were not an asset of the former landlord out of which the tenants' unsecured claims could be satisfied. Instead, they belonged to Sens as purchaser of the equity of redemption after vested claims of recognized lienors were satisfied which under the circumstances herein and authorities cited did not include tenants who were only unsecured creditors of their former landlord.
Sens as purchaser of the equity of redemption was a stranger to unsecured obligations of the landlord titleholder. His equity of redemption rights in the surplus of the foreclosure sale were not subordinate to any rights of others save those which represented vested or recognized liens against the title. Merely because he acquired the equity of redemption did not ipso facto make him responsible for unsecured claims against the landlord.
It may be that had the landlord retained the equity of redemption the chancellor might have been justified because of the particular hardship circumstances to which the tenants were subjected by the landlord or its agent in imposing a lien upon the surplus for their unsecured claims, provided nor priorly vested rights in the property were affected. However, Sens, under the related circumstances, as purchaser of the equity of redemption was not burdened in law or in equity with any responsibility for the landlord's unsecured creditors, including the dispossessed tenants. His rights in the surplus are not to be equated with those of a landlord or subject to the same equitable claims. He purchased the record title or equity of redemption in the property subject only to vested rights  not those of unsecured creditors of the landlord.
The decision of the District Court is quashed with direction that further proceedings below be in accord herewith.
It is so ordered.
ADKINS, C.J., and ROBERTS, BOYD, McCAIN, DEKLE and OVERTON, JJ., concur.