409 So.2d 1047 (1982)
James M. BERNARD, Jr., by and through His Mother, Natural Guardian and Next Friend, Roberta Bernard, and Roberta Bernard, Individually, Petitioners,
v.
KEE MANUFACTURING COMPANY, INC., Respondent.
No. 60390.
Supreme Court of Florida.
January 28, 1982.
*1048 Larry Klein, and Cone, Wagner, Nugent, Johnson, Hazouri & Roth, West Palm Beach, for petitioners.
Sheldon J. Gensler, Sarasota, for respondent.
SUNDBERG, Chief Justice.
The issue we confront in this case is whether the purchaser of the assets of a manufacturing firm which continues under the same trade name the general product line of the seller can be liable for a defective product manufactured by the seller, even though the traditional corporate law rule would impose no liability. We adhere to the traditional rule.

I.
Petitioners, the Bernards, brought a products liability claim against respondent Kee Manufacturing Company, Inc. (Kee, Inc.). They claimed that a lawn mower manufactured and sold in 1967 by Kee Manufacturing Company (Kee), the predecessor business to Kee, Inc., caused an injury in 1976 to James Bernard, Jr., who with his mother sought recovery based on negligence, implied warranty and strict liability. Kee, Inc. had incorporated in 1972 when it had acquired for cash the assets of Kee from the owner, Flechas J. Kee, who did business as Kee Manufacturing Company. These assets included the manufacturing plant, inventory, good will, and the right to use the name "Kee Manufacturing Company." Kee, Inc., by the terms of this acquisition, had not assumed liabilities or obligations of its predecessor, Kee. The former owner of the business had no interest in the new company. Kee, Inc. used these assets to continue the manufacture of lawn mowers, maintaining the same factory personnel and using the trade name of Kee Mowers. The entire manufacturing process was effectively continued, but under a new owner and management. Kee, Inc. still provides replacement parts for the model of lawn mower involved here, though it has discontinued manufacturing the model. The brochure of Kee, Inc. states that it has been manufacturing lawn mowers since 1948. The Bernards have also sought separate recovery from Flechas J. Kee, individually, and from the retailer who sold the lawn mower.
*1049 The trial court granted Kee, Inc.'s motion for summary judgment, and this was affirmed by the District Court of Appeal, Second District, which refused to consider the financial responsibility of the predecessor to determine potential liability of a successor company, creating conflict with Kinsler v. Rohm Tool Corp., 386 So.2d 1280 (Fla. 3d DCA 1980). Art. V, § 3(b)(3), Fla. Const. (1980).

II.
The vast majority of jurisdictions follow the traditional corporate law rule which does not impose the liabilities of the selling predecessor upon the buying successor company unless (1) the successor expressly or impliedly assumes obligations of the predecessor, (2) the transaction is a de facto merger, (3) the successor is a mere continuation of the predecessor, or (4) the transaction is a fraudulent effort to avoid liabilities of the predecessor. See Sens v. Slavia, Inc., 304 So.2d 438 (Fla. 1974); 15 W. Fletcher, Cyclopedia of the Law of Private Corporations §§ 7122, 7123 (rev. perm. ed. 1973 & Cum.Supp. 1981); Note, Products Liability  Liability of Transferee for Defective Products Manufactured by Transferor, 30 Vand.L.Rev. 238, 243 (1977). The general corporate law rule applies to products liability. See Leannais v. Cincinnati, Inc., 565 F.2d 437 (7th Cir.1977); 15 W. Fletcher, supra at § 7123 (Cum.Supp. 1981).
Courts in a few jurisdictions have begun to extend products liability to the successor corporation in an effort to effectuate an acknowledged purpose of strict liability for defective products, that the costs of a defective product should be included in that product. A first series of cases, led by Cyr v. B. Offen & Co., 501 F.2d 1145 (1st Cir.1974), has expanded the continuity exception to the traditional rule by deleting a historical requirement of substantial identity of ownership. Turner v. Bituminous Casualty Co., 397 Mich. 406, 244 N.W.2d 873 (1976), followed Cyr in expanding this exception.[1] A second line of cases, begun by Ray v. Alad Corp., 19 Cal.3d 22, 136 Cal. Rptr. 574, 560 P.2d 3 (1977), developed a new exception to the general rule of a corporate successor's non-liability, the product-line exception:
[A] party which acquires a manufacturing business and continues the output of its line of products ... assumes strict tort liability for defects in units of the same product line previously manufactured and distributed by the entity from which the business was acquired.
Id. at 34, 136 Cal. Rptr. at 582, 560 P.2d at 11.
This rule has been adopted by only two other jurisdictions. Ramirez v. Amsted Industries, Inc., 86 N.J. 332, 431 A.2d 811 (1981); Dawejko v. Jorgensen Steel Co., 290 Pa.Super. 15, 434 A.2d 106 (1981). The courts in these cases based justification of the product-line exception on (1) the lack of remedy for the plaintiff, (2) the successor's ability to spread the risk through insurance by estimating risks in the previously manufactured product, and (3) the fairness of requiring the successor to assume the burdens as well as the benefits of the original manufacturer's good will. Though these justifications have undeniable appeal, we find countervailing considerations more convincing.

III.
We choose not to join this vanguard of courts, due in part to the threat of economic annihilation that small businesses would face under such a rule of expanded liability. Because of their limited assets, small corporations would face financial destruction from imposition of liability for their predecessor's products:
The economy as a whole suffers when small successor corporations lose such cases since corporate acquisitions are discouraged due to business planners' fears of being held so liable. Furthermore, the marketability of on-going corporations is *1050 diminished, perhaps forcing the sellers into the undesirable process of liquidation proceedings. Currently, small manufacturing corporations comprise ninety percent of the nation's manufacturing enterprises. If small manufacturing corporations liquidate rather than transfer ownership, the chances that the corporations will be replaced by other successful small corporations are decreased. As a result, there will be fewer small manufacturers and the larger more centralized manufacturers will increase their production to meet the demands of the marketplace. Greater centralization of business is adverse to the long held American notion that the small business represents independence, freedom and perseverance.[2]
One court has dubbed these concerns "cassandrian."[3] But due to the recognized difficulty and high costs that a small business experiences in obtaining products liability insurance for defects in a predecessor's product,[4] we perceive the increased burden on small business as a very real threat, as real a threat as the Trojan Horse.[5]
Although we do not consider that the legislature is alone suited to make the determination of whether successor corporate liability should be extended,[6] we do perceive other legitimate policy considerations for refusing to expand such liability. Extending liability to the corporate successor is not consistent with at least one major premise of strict liability, which is to place responsibility for a defective product on the manufacturer who placed that product into commerce. The corporate successor has not created the risk, and only remotely benefits from the product. The successor has not invited usage of the product or implied its safety. Since the successor was never in a position to eliminate the risk, a major purpose of strict liability in modifying a manufacturer's behavior is also lost. See Domine v. Fulton Iron Works, 76 Ill. App.3d 253, 32 Ill.Dec. 72, 395 N.E.2d 19 (1979); see also Tucker v. Paxson Machine Co., 645 F.2d 620 (8th Cir.1981) (refuses to follow product-line exception because not well established); Leannais v. Cincinnati, Inc., 565 F.2d at 441 n. 8 (refuses to expand corporate law rule).[7]
*1051 For these reasons we adhere to the traditional corporate law rule, and approve the decision of the District Court of Appeal, Second District, in this case, other than its deference to the legislature. Bernard v. Kee Manufacturing Co., Inc., 394 So.2d 552 (Fla. 2d DCA 1981). On the other hand Kinsler v. Rohm Tool Corp., 386 So.2d 1230 (Fla. 3d DCA 1980), looked at the financial responsibility of the predecessor to determine the successor's liability and thus expanded the corporate law rule. We disapprove that conflicting decision insofar as it is inconsistent with our opinion.
It is so ordered.
BOYD, OVERTON, ALDERMAN and McDONALD, JJ., concur.
ADKINS, J., dissents.
NOTES
[1] See also Knapp v. North Am. Rockwell Corp., 506 F.2d 361 (3d Cir.1974), cert. denied, 421 U.S. 965, 95 S.Ct. 1955, 44 L.Ed.2d 452 (1975) (expands de facto merger exception); Shannon v. Samuel Langston Co., 379 F. Supp. 797 (W.D. Mich. 1974).
[2] Note, Products Liability and Successor Corporations: Protecting the Product User and the Small Manufacturer Through Increased Availability of Products Liability Insurance, 13 U.Calif. Davis L.Rev. 1000, 1002-3 (1980) (footnotes omitted).
[3] See Turner, 397 Mich. at 428, 244 N.W.2d at 883.
[4] See Products Liability and Successor Corporations, supra note 3, at 1024-25 & nn. 90-96.
[5] In passing we note that Cassandra, although predicting disaster, was unerringly accurate. Her lot was to be unbelieved and to know her prophecies were ineluctable:

instamus tamen inmemores caecique furore, et monstrum infelix sacrata sistimus arce. tunc etiam fatis aperit Cassandra futuris ora, dei iussu non umquam credita Teucris. [Nevertheless, we struggle madly, without thought or sight, to plant the ruinous monster within our holy citadel. Even now Cassandra reveals our overhanging doom, and as before we ignore her words by the gods' fiat.]
2 Virgil, The Aeneid 30, lines 244-47 (T. Page ed. 1967).
[6] See Leannais v. Cincinnati, Inc., 565 F.2d at 441; Bernard v. Kee Mfg. Co., Inc., 394 So.2d 552, 555 (Fla. 2d DCA 1981).
[7] Several courts have also recognized that the sale of a sole proprietorship to a successor corporation does not justify expanding successor liability since the selling entity does not disappear as could a selling corporation. Kee, the selling entity, appears to have been a sole proprietorship, based upon Flechas J. Kee's signing individually the agreement for sale and purchase of assets and not as a corporate officer. Even in Michigan, which has adopted an expanded interpretation of successor corporate liability in Turner, an appellate court did not find imposition of successor liability was warranted when the seller was a sole proprietorship. Lemire v. Garrard Drugs, 95 Mich. App. 520, 291 N.W.2d 103 (1980). A Wisconsin appellate court has similarly refused to adopt the product-line exception or expand the continuation exception where a sole proprietorship was the selling entity, because the sole proprietorship could still be liable for manufacture of the defective product. Tift v. Forge King Indus., Inc., 102 Wis.2d 327, 306 N.W.2d 289 (Wis. App. 1981). Tift noted that no case had expanded the general rule under these circumstances, distinguishing Cyr v. B. Offen & Co. because their former employees of the sole proprietorship bought and continued the business. Tift, 102 Wis. at 330, 306 N.W.2d at 291.