438 So.2d 29 (1983)
Robert E. KELLY, Appellant,
v.
AMERICAN PRECISION INDUSTRIES, INC., Appellee.
No. 82-1428.
District Court of Appeal of Florida, Fifth District.
August 11, 1983.
Rehearing Denied October 4, 1983.
Herbert H. Hall, Jr., of Maher, Overchuck, Langa, Cate, Lobb & Webb, P.A., Orlando, for appellant.
Mitchell J. Frank of Rogers & Dowling, P.A., Orlando, for appellee.
COBB, Judge.
This appeal challenges the entry of a summary judgment discharging American Precision Industries, Inc. (API), as a defendant below. The basis of the judgment was that API, as a successor corporation, did not assume the liabilities of its predecessor, Truck Equipment Co., Inc. (TEC). Prior to the sale of all of its stock to API in January, 1969, TEC manufactured and delivered an allegedly defective garbage truck. Moving parts of the trash compactor on this truck amputated the hand and lower arm of the plaintiff, below, Robert E. Kelly, who worked on the truck.
The facts adduced before the trial court, as construed most favorably to appellant, showed that at the time API purchased all of the stock of TEC, an API vice-president was placed in charge of the wholly-owned subsidiary and the API treasurer also became treasurer of TEC. Both the vice-president and the treasurer remained on the *30 API payroll and under the supervision of the API corporate directorship. API handled all insurance, accounting, payroll and bill payments for TEC.
After three years of running TEC, API sold all of the TEC physical assets to Southern Industries in December, 1971. The proceeds of this sale went entirely to API; TEC was left a corporate shell with no assets, no employees, no property, and no active business operation.
In a federal court suit instituted by API concerning payment from Southern for the TEC assets, API, as plaintiff, alleged that it was the "sole stockholder of and it controlled and operated (TEC) as its wholly-owned subsidiary." TEC was not a party to the action.
The issue on this appeal is whether or not API, under these facts and as a matter of law, is insulated from liability for the alleged negligence of TEC, which occurred prior to the stock purchase. We disagree with the trial judge's determination, and reverse. That determination, according to both parties on appeal, apparently was based on the trial court's reading of the Florida Supreme Court case of Bernard v. Kee Mfg. Co., Inc., 409 So.2d 1047 (Fla. 1982).
In Bernard, the plaintiff brought an action against Kee Manufacturing Co., Inc. (Kee, Inc.), claiming that a lawnmower manufactured and sold by the predecessor to the present company, Kee Manufacturing Co., in 1967, caused an injury in 1976. Kee, Inc., was incorporated in 1972, when it purchased the assets of Kee Co. from the owner. The assets purchased included the manufacturing plant, the inventory and the right to use the company name. The previous owner had no interest in the new company, and Kee, Inc., assumed no liabilities or obligations of its predecessor. Kee, Inc., continued to manufacture lawnmowers, maintaining the same factory personnel and using the same trade name  in essence, the entire manufacturing process was effectively continued, but under a new owner and management. 409 So.2d at 1048. The present company provided replacement parts for the subject mower, and in its brochures stated that it had been manufacturing lawnmowers since 1948.
The trial court granted Kee, Inc.'s motion for summary judgment, which was affirmed by the Second District, at 394 So.2d 552 (Fla. 2d DCA 1981). The Second District refused to consider the financial responsibility of the predecessor in determining liability of a successor, thus creating conflict with the earlier case of Kinsler v. Rohm Tool Corp., 386 So.2d 1280 (Fla. 3d DCA 1980).
The Supreme Court affirmed the Second District, beginning its analysis by stating the traditional corporate law rule, which it adopted, which does not impose the liabilities of the selling predecessor upon the buying successor company unless: (1) the successor expressly or impliedly assumes obligations of the predecessor; (2) the transaction is a de facto merger; (3) the successor is a mere continuation of the predecessor; or (4) the transaction is a fraudulent effort to avoid liabilities of the predecessor. 409 So.2d at 1049.
The court refused to extend product liability to successors beyond the traditional rule, claiming that small corporations would face financial disaster from imposition of liability for their predecessors' products. The court stated that such liability would cause corporate acquisitions to be discouraged for fear of being held liable, and would lead to fewer corporations being sold and more being forced into liquidation proceedings. This, the court felt, would lead to more centralized manufacturers, and less small business enterprises.
The court also stated further justification for not extending liability to the corporate successor as follows:
Extending liability to the corporate successor is not consistent with at least one major premise of strict liability, which is to place responsibility for a defective product on the manufacturer who placed that product into commerce. The corporate successor has not created the risk, and only remotely benefits from the *31 product. The successor has not invited usage of the product or implied its safety. Since the successor was never in a position to eliminate the risk, a major purpose of strict liability in modifying a manufacturer's behavior is also lost.
409 So.2d at 1050. The court held that the traditional corporate law rule would apply, without regard to the financial responsibility of the predecessor in deciding the successor's liability, disapproving in part Kinsler.
Kelly contends that Bernard, in which only the assets of the predecessor corporation were purchased, is inapplicable to the instant case, wherein API purchased all of the stock of TEC, then stripped it of all assets, the benefit thereof going solely to API, not TEC. In effect, Kelly is arguing the de facto merger exception to the traditional corporate law rule, which exception was expressly recognized in Bernard. Bernard at 1049.
The act of a parent corporation in stripping a subsidiary corporation for the exclusive benefit of the parent gives rise to liability on the part of the parent, as was expressly recognized in Unijax, Inc. v. Factory Insurance Assn., 328 So.2d 448 (Fla. 1st DCA), cert. denied, 341 So.2d 1086 (Fla. 1976). Therein, it was held that the corporate veil could be pierced to go against a stockholder/parent corporation operating a subsidiary as a "mere instrumentality" when there exists:
(a) Control by the parent to such a degree that the subsidiary has become a mere instrumentality.
(b) Fraud or wrong by the parent through its subsidiary, e.g., ... stripping the subsidiary of its assets... .
(c) Unjust loss or injury to the claimant such as insolvency of the subsidiary.
328 So.2d at 454.
Unijax, in allowing the tracing of corporate assets on these enumerated bases, is consistent with the reasoning of a number of prior Florida Supreme Court cases: see, e.g., Levenstein v. Sapiro, 279 So.2d 858 (Fla. 1973); Advertects, Inc. v. Sawyer Industries, Inc., 84 So.2d 21 (Fla. 1955); Mallory S.S. Co. v. Baker & Holmes Co., 117 Fla. 196, 157 So. 504 (1934); Beach v. Williamson, 78 Fla. 611, 83 So. 860 (1920).
In the instant case, the three elements of the Unijax test are met, and TEC can be seen as a "mere instrumentality" of API, allowing for liability to lie against API.
The summary judgment entered below is reversed, and this cause remanded for further proceedings consistent with this opinion.
REVERSED and REMANDED.
ORFINGER, C.J., and FRANK D. UPCHURCH, Jr., J., concur.