490 So.2d 35 (1986)
The CELOTEX CORPORATION, Petitioner,
v.
Leonard H. PICKETT, Sr., and Linda N. Pickett, his wife, Respondents.
No. 66383.
Supreme Court of Florida.
May 8, 1986.
Rehearing Denied July 15, 1986.
*36 Julian Clarkson of Holland and Knight, Tallahassee, James W. Kynes, The Celotex Corp., and Thomas C. MacDonald, Jr., Charles P. Schropp and Raymond T. Elligett, Jr. of Shackleford, Farrior, Stallings and Evans, Tampa, for petitioner.
Wayne Hogan of Brown, Terrell, Hogan and Ellis, Jacksonville, for respondents.
C. Harris Dittmar, Mary K. Phillips and Timothy J. Corrigan of Bedell, Dittmar, DeVault, Pillans and Gentry, Jacksonville, amicus curiae for The Academy of Florida Trial Lawyers.
EHRLICH, Justice.
We have for our review a decision of the First District Court of Appeal reported as Celotex Corp. v. Pickett, 459 So.2d 375 (Fla. 1st DCA 1984). We have jurisdiction pursuant to article V, section 3(b)(3), Florida Constitution, based upon apparent direct and express conflict with prior decisions of this Court: White Construction Co. v. DuPont, 455 So.2d 1026 (Fla. 1984); Bernard v. Kee Manufacturing Co., 409 So.2d 1047 (Fla. 1982); Mercury Motors Express, Inc. v. Smith, 393 So.2d 545 (Fla. 1982).
The facts relevant for our review here are that the respondent husband (Pickett) was employed in a Jacksonville shipyard from 1965 through June 1968, where as part of his employment as an insulator of ships, he extensively used Philip Carey asbestos cement. Pickett developed severe lung problems, due to the devastating effects on the human body which results from exposure to asbestos. The Picketts sued, on the grounds of negligence and strict liability, several defendants including the petitioner (Celotex) in its capacity as the corporate successor to Philip Carey. Finding that Philip Carey was negligent in placing "defective" asbestos-containing insulating products on the market which caused Pickett's injuries, the jury awarded compensatory damages of $500,000 to Pickett and $15,000 to his wife. The jury also determined that Philip Carey had acted so as to warrant punitive damages in the amount of $100,000 against Celotex. Celotex's appeal of the imposition of punitive damages formed the basis for the First District's opinion below which affirmed the award.
The threshold question involved here is the legal status of Celotex as the successor to Philip Carey. The district court opinion set forth the following background:
The Philip Carey Corporation was begun in 1888 and subsequently merged with Glen Alden Corporation in 1967. Thereafter, Philip Carey merged with another Glen Alden subsidiary, Briggs Manufacturing Company, and became known as Panacon Corporation. Celotex purchased Glen Alden's controlling interest in 1972 and later purchased the remaining shares of Panacon and merged it into Celotex.
459 So.2d at 376.
The effect of this merger, as correctly recognized by the First District, is controlled *37 by section 607.231(3), Florida Statutes (1983), which reads:
(c) Such surviving or new corporation shall have all the rights, privileges, immunities and powers, and shall be subject to all of the duties and liabilities, of a corporation organized under this chapter. (Emphasis added.)
Celotex has admitted that it is liable, because of the merger, for the compensatory damages awarded to the Picketts. The sole and narrow issue before us here is whether punitive damages were properly assessed against petitioner, the surviving corporation in a statutory merger.
Celotex, however, maintains that the trial court and the district court below misapplied our prior decisions by holding Celotex liable for punitive damages, when Philip Carey, not Celotex, was the "real wrongdoer." Celotex also claims that imposition of punitive damages against Celotex, simply because it is the statutory successor of Philip Carey, contravenes the purpose of such damages in Florida. We disagree with both contentions.
Celotex's argument is essentially that: first, the district court misapplied Bernard v. Kee Manufacturing Co., 409 So.2d 1047 (Fla. 1982), by approving the trial court's assessment of punitive damages against Celotex merely because it is the statutory successor to Philip Carey; second, the First District Court opinion failed to consider the requirements set forth in Mercury Motors Express, Inc. v. Smith, 393 So.2d 545 (Fla. 1981), that some degree of fault must exist before punitive damages may be vicariously imposed; and, finally, the degree of tortious conduct at issue here does not rise to the requisite level of culpability justifying punitive damages as enunciated in White Construction Co. v. DuPont, 455 So.2d 1026 (Fla. 1984).
Celotex misperceives the scope of our prior decisions. In Bernard, the plaintiff brought a product liability claim against the defendant corporation even though the defendant's predecessor had manufactured the defective product. In refusing to accept the "product line" theory of corporate successor liability, we noted that the defendant corporation had purchased from its predecessor its assets which included the manufacturing plant, inventory, good will and the corporate name. We found that the defendant corporation, by the terms of the acquisition agreement, had not assumed the liabilities or obligations of its predecessor. 409 So.2d at 1048. We also recognized that a successor corporation could succeed to its predecessor's liabilities if the successor explicitly or impliedly assumed the obligations of the predecessor. Id. at 1049.
In Mercury Motors, we had occasion to address the propriety of a punitive damages award against an employer based solely on the vicarious liability theory of respondeat superior. Our holding in Mercury Motors was that the doctrine of respondeat superior, without proof of some fault on the part of the corporate employer, could not serve to justify an award of punitive damages. We affirmed the established rule in Florida that the correct standard in determining whether liability for punitive damages may properly be imposed, is the same for an individual "master" as for a corporate entity. 393 So.2d at 547.
An issue in White Construction involved the question of what degree of negligence was required in order to submit the issue of punitive damages to a jury. In reaffirming the rule set forth in Carraway v. Revell, 116 So.2d 16 (Fla. 1959), we opined in White Construction that the degree of negligence necessary to sustain the imposition of punitive damages is the same as that required to sustain a conviction of manslaughter. 455 So.2d at 1028.
Bernard simply does not address the issue of a successor corporation's assumption of its predecessor's liabilities, including punitive damages, when two corporations truly merge. Celotex's reliance on White Construction is similarly misplaced. Celotex has not raised as an issue either before the district court or here, the sufficiency of the evidence justifying an award of punitive damages against Panacon. It is Celotex's *38 liability for the tortious conduct of Panacon which represents the gravamen of Celotex's argument before this Court. Celotex, having merged with Panacon, cannot now disclaim its lineage.
Celotex seeks here to characterize its liability as "vicarious," in contravention of our holding in Mercury Motors, since, according to it, Philip Carey/Panacon is the "real wrongdoer" and there is no evidence of fault by Celotex. We disagree with this characterization. Because of its merger agreement with Panacon, whereby "all debts, liabilities and duties" of Panacon are enforceable against Celotex, and because of the effect of section 607.231(3), the liability imposed upon Celotex is direct, not vicarious. Liability for the reckless misconduct of Philip Carey/Panacon legally continues to exist within, and under the name of, Celotex. See, e.g., Barnes v. Liebig, 146 Fla. 219, 1 So.2d 247 (1941). Where two corporations have truly merged, a corporate tortfeasor by any other name is still a tortfeasor, to paraphrase Shakespeare. See, e.g., Moe v. Transamerica Title Insurance Co., 21 Cal. App.3d 289, 98 Cal.Rpt. 547, 556-57 (1971) (merger "merely directs the blood of the old corporation into the veins of the new, the old living in the new"); Atlanta Newspapers, Inc. v. Doyal, 84 Ga. App. 122, 128, 65 S.E.2d 432, 437 (1951) (merger "is like the uniting of two or more rivers, neither stream is annihilated, but all continue in existence").
Celotex's claim that the imposition of punitive damages here contravenes the purpose of such damages is unpersuasive. Punitive damages are imposed as a punishment of the defendant and as a deterrent to others. Fisher v. City of Miami, 172 So.2d 455 (Fla. 1965). Both aspects of this purpose are present here. Celotex, as the present embodiment of Philip Carey/Panacon, is being punished for the reckless conduct giving rise to this suit. Further, allowing punitive damages in this instance may well deter other corporations from seeking to merge with other companies which have engaged in reckless conduct detrimental to the public health and thereby have the potential for the imposition of punitive damages. See Campbell v. Government Employees Insurance Co., 306 So.2d 525, 531 (Fla. 1974) (punitive damages are the "most satisfactory way to correct evil-doing [sic] in areas not covered by the criminal law"). Were we to hold that the potential for punitive damages disappears at merger, this may well encourage reckless conduct. Our holding here recognizes that since reckless wrongdoing by the predecessor can result in liability for punitive damages against the successor, acquisition candidates are deterred from such actions. Realization that their companies will sell for less, or not at all, if they engage in reckless behavior provides an incentive for acquisition candidates to conform their behavior to socially acceptable norms.
Further, corporations are in a very real sense, "molders of their own destinies" in acquisition transactions, with the full panoply of corporate transformations at their disposal. When a corporation, such as Celotex here, voluntarily chooses a formal merger, it will take the "bad will" along with the "good will." See Krull v. Celotex Corp., 611 F. Supp. 146 (N.D.Ill. 1985). We will not allow such an acquiring corporation to "jettison inchoate liabilities into a never-never land of transcorporate limbo." Wall v. Owens-Corning Fiberglass Corp., 602 F. Supp. 252, 255 (N.D.Tex. 1985).
We note that the weight of authority from other jurisdictions is in accord with our holding here. See, e.g., Krull; Wall; Hanlon v. Johns-Manville Sales Corp., 599 F. Supp. 376 (N.D.Iowa 1984); Neal v. Carey Canadian Mines, Ltd., 548 F. Supp. 357 (E.D.Pa. 1982), affirmed, 760 F.2d 481 (3d Cir.1985).
We approve the decision of the First District Court of Appeal.
It is so ordered.
BOYD, C.J., and ADKINS and SHAW, JJ., concur.
*39 OVERTON, J., dissents with an opinion in which McDONALD, J., concurs.
McDONALD, J., dissents with an opinion in which OVERTON, J., concurs.
OVERTON, Justice, dissenting.
I dissent. I agree with Justice McDonald's dissent. Punitive damages are designed to protect the public by punishing a wrongdoer whose conduct evinces "wantonness or recklessness" or "grossly careless disregard of the safety and welfare of the public." White Construction Co. v. Dupont, 455 So.2d 1026, 1029 (Fla. 1984) (quoting Carraway v. Revell, 116 So.2d 16, 20 n. 12 (Fla. 1959)). Celotex is not being punished for its reckless exposure of the public to asbestos, but, as the majority acknowledges, is being punished for its method of acquiring Philip Carey's assets.
The majority maintains that Celotex could have molded its own destiny and avoided punitive damages by using another method of acquiring Philip Carey's assets. The majority distinguishes Bernard v. Key Manufacturing Co., 409 So.2d 1047 (Fla. 1982), on the basis that in Bernard the corporation did not assume the "liabilities and obligations" of the predecessor business while, in this instance, Celotex assumed the "liabilities and obligations" of Philip Carey. I find no justification whatever to punish any business entity vicariously for something that it clearly did not do and that it could have avoided through the use of another method of acquiring the business. Celotex's executive officers and legal counsel would have had to prophesy eighteen years ago that courts would hold corporations vicariously liable for punitive damages of acquired businesses when the acquiring corporation assumed the "liabilities and obligations" of the predecessor business.
After this decision, businesses must recognize that purchasing a business and assuming its "liabilities and obligations" means possible punishment for willful and wanton misconduct of the predecessor, without regard for notice or knowledge of the misconduct. I find no justification for punishing this corporation or any business entity when its conduct did not cause injury and when it could have avoided the punishment by selecting another form of acquisition.
Celotex is not being punished for its misconduct, but for the business judgment it used in how it acquired Philip Carey. Holding Celotex vicariously liable in these circumstances merely fuels the flame of advocates who favor elimination of punitive damages.
McDONALD, J., concurs.
McDONALD, Justice, dissenting.
The reason an assessment of punitive damages is authorized is to further a societal interest in the conduct of people or corporations as they deal with other people of corporations. Its purpose is to punish the wrongdoer and to deter others from committing similar acts in the future. See Mercury Motors Express, Inc. v. Smith, 393 So.2d 545 (Fla. 1981). I fail to see how society would be benefitted by punishing Celotex by awarding punitive damages in a lawsuit brought in the 1980's against Celotex, which by operation of law assumed the liabilities of another corporation in 1972 for the acts committed by that corporation in 1965-1968 or earlier, unless Celotex continued the same practices that produced the punitive damages award. Celotex did not; it did not even retain the culpable officers of the offending corporation. Other punitive damage awards in multiple asbestos sales and distribution cases adequately deter this type of conduct. Finding that it is unreasonable to punish Celotex for these events that took place at least fifteen years ago, and finding that the sale and distribution of asbestos has been adequately deterred by other punitive damage cases, I would not approve the assessment of punitive damages against Celotex in this case. To do so would be to hold one vicariously liable for the acts of another. This is contrary to my interpretation of Mercury Motors.
OVERTON, J., concurs.