813 So.2d 266 (2002)
LABORATORY CORPORATION OF AMERICA, Appellant,
v.
PROFESSIONAL RECOVERY NETWORK, etc., et al., Appellee.
No. 5D01-1796.
District Court of Appeal of Florida, Fifth District.
April 12, 2002.
*268 Bernard C. O'Neill, John B. Liebman and Mark O. Cooper of O'Neill, Liebman & Cooper, P.A., Orlando, for Appellant.
Chester J. Trow of Chester J. Trow, P. A., Ocala, for Appellee.
ORFINGER, R.B., J.
Laboratory Corporation of America (Lab Corp) appeals a summary final judgment entered in favor of Professional Recovery Network, Inc. (PRN) in its action seeking to hold PRN liable for debts incurred to Lab Corp by Drug Programs Management, Inc. (DPM). In its suit, Lab Corp asserted that PRN was formed for the purpose of defrauding DPM's creditors; that PRN was the alter ego of DPM and was a mere continuation of DPM's business; and, that there was a de facto merger of DPM and PRN, rendering PRN liable for DPM's debts. Because we find issues of material fact requiring resolution at trial, we reverse.
DPM was incorporated in August, 1991, by Gerald E. McKown, its sole shareholder, officer and director. DPM provided management services for substance abuse recovery programs operated by various state agencies. Typically, licensed professionals participating in these recovery programs would be required to submit to random drug tests. The participant would provide a DPM specimen collector (i.e., a doctor, nurse, or laboratory) with a blood or urine sample that was forwarded to Lab Corp for analysis. The participant would pay the collector for the service, the collector would send the payment to DPM, and DPM would pay Lab Corp for the laboratory tests it performed. By early March, 1998, DPM was in financial trouble and owed Lab Corp in excess of $500,000. Lab Corp advised McKown and DPM that it was planning to file a lawsuit to collect the outstanding debt if the parties could not promptly agree to satisfactory repayment terms. Several days later, McKown incorporated PRN. Shortly thereafter, and only five days after Lab Corp filed suit against DPM, McKown wrote the following letter on PRN letterhead to DPM's specimen collectors:
21 April, 1998
To all Recovery Program collectors As you can see by the letterhead, we have changed our name to better reflect what we actually do. This change becomes effective on Friday, April 24th. After that date, we would appreciate your reminding the participant(s) that you collect to please make their check payable to PRN Inc. We have enclosed new pre-paid envelopes for your convenience, and ask that you discard the ones that are addressed to Drug Programs Management, Inc.
While we have added a new toll free number (1-888-795-3030), our current telephone number (1-800-222-6562) and fax number (1-800-870-4676) remain the same.
Thank you for your assistance, and as always, we sincerely appreciate your help.
 Sincerely yours,
 Gerry McKown
 President
(Emphasis added.)
*269 Realizing that DPM was now a nearly empty shell, Lab Corp sued PRN alleging that DPM's assets had been fraudulently transferred to it; that PRN was the alter ego of DPM; and, that a de facto merger of the two corporations had occurred making PRN liable for DPM's debts. The trial court granted PRN's motion for summary judgment, and this appeal ensued.
We review a summary final judgment de novo. Major League Baseball v. Morsani, 790 So.2d 1071 (Fla.2001). In doing so, we must determine whether any "genuine issue as to any material fact" exists and whether "the moving party is entitled to judgment as a matter of law." Fla. R. Civ. P. 1.510(c). The party moving for summary judgment has the burden to conclusively demonstrate the non-existence of any genuine issue of material fact. City of Cocoa v. Leffler, 762 So.2d 1052, 1055 (Fla. 5th DCA 2000). In making that determination, the record evidence must be viewed in the light most favorable to the non-moving party. Krol v. City of Orlando, 778 So.2d 490, 492 (Fla. 5th DCA 2001).
On appeal, Lab Corp argues that the trial court erred in granting summary judgment in favor of PRN because genuine issues of fact remain regarding DPM's relationship with PRN. PRN counters by asserting that while it is clear that Lap Corp has a valid and substantial claim against DPM, it is not DPM's alter ego and has no liability for DPM's debts.
A detailed examination of the record reveals that DPM and PRN have many things in common including:
(1) McKown as the sole officer and shareholder of both corporations.
(2) The same attorney and resident agent.
(3) The same business.
(4) Substantially the same customers.
(5) Substantially the same employees.
(6) The same toll free telephone and fax numbers.
(7) The same accounting system and computerized database.
While the two corporations operated out of different locations, PRN's "office" was McKown's home. In his deposition, McKown testified that he and DPM were one and the same. He seemingly felt free to treat the corporations, and their assets, as his own.[1] Given the timing of the incorporation of PRN in relationship to the impending lawsuit by Lab Corp against DPM, considered in light of the commonalities described above, substantial questions exist regarding the claims asserted against PRN by Lab Corp.
Generally, Florida law does not impose the liabilities of a predecessor corporation on a successor corporation unless:
(1) the successor expressly or impliedly assumes obligations of the predecessor,
(2) the transaction is a de facto merger,
(3) the successor is a mere continuation of the predecessor, or (4) the transaction is a fraudulent effort to avoid the liabilities of the predecessor.
Bernard v. Kee Mfg. Co., Inc., 409 So.2d 1047, 1049 (Fla.1982). The imposition of liability upon a successor corporation is based on the notion that no corporation should be permitted to commit a tort or breach of contract and avoid liability through corporate transformation in form only. Amjad Munim, M.D., P.A. v. Azar, 648 So.2d 145, 154 (Fla. 4th DCA 1994).
*270 A continuation of business resulting in liability of the successor corporation for its predecessor's debts occurs when the successor corporation is merely a continuation or reincarnation of the predecessor corporation under a different name. Munim, 648 So.2d at 154 (citing Bud Antle, Inc. v. E. Foods, Inc., 758 F.2d 1451, 1458 (11th Cir.1985) (en banc)). The "purchasing corporation must not merely be a `new hat' for the seller, with the same or similar entity or ownership." Id. While having common attributes does not automatically impose liability on a successor corporation, merely repainting the sign on the door and using new letterhead certainly gives the appearance that the new corporation is simply a continuation of the predecessor corporation.
A de facto merger occurs where one corporation is absorbed by another without formal compliance with the statutory requirements for a merger. Munim, 648 So.2d at 153. See Arnold Graphics Indus., Inc. v. Indep. Agent Ctr., Inc., 775 F.2d 38 (2d Cir.1985). To determine if a de facto merger has occurred, the finder of fact may look at any factors reasonably indicative of commonality or of distinctiveness. "The bottom-line question is whether each entity has run its own race, or whether there has been a relay-style passing of the baton from one to the other." Oman Int'l Fin. Ltd. v. Hoiyong Gems Corp., 616 F.Supp. 351, 361 (D.C.R.I.1985). See 300 Pine Island Assoc. v. Steven L. Cohen & Assoc., 547 So.2d 255, 256 (Fla. 4th DCA 1989). The significant question is whether there has been a change in form, but not in substance.
The test for the existence of a de facto merger or a mere continuation of the predecessor's business was set forth in 300 Pine Island Associates:
A de facto merger occurs when one corporation is absorbed by another, i.e., there is a continuity of the selling corporation evidenced by such things as the same management, personnel, assets, location and stockholders
547 So.2d at 256 (citing Orlando Light Bulb Serv., Inc. v. Laser Lighting & Elec. Supply, Inc., 523 So.2d 740, 742 n. 1 (Fla. 5th DCA 1988)). Based on the pleadings, affidavits, and depositions in the record, and viewing the record in the light most favorable to Lab Corp, material questions of fact remain as to whether a de facto merger occurred between DPM and PRN or whether DPM's business was simply continued by PRN.
Finally, we turn to the claim that DPM fraudulently transferred its assets to PRN. Under the Uniform Fraudulent Transfer Act (UFTA), any transfer made with "actual intent to hinder, delay or defraud" any present or future creditor is a fraudulent transfer. § 726.105(1)(a), Fla. Stat. (1998). PRN argues that no assets, as that term is defined by section 726.102(2), Florida Statutes, were transferred by DPM to PRN. Specifically, PRN asserts that because its customers were not bound to it by contractual arrangements and could have terminated their relationships with DPM at will, DPM's business relationships with its customers were not assets that could be transferred, fraudulently or otherwise, to PRN. We disagree. In Munim, the fourth district rejected a similar argument regarding the value of a medical practice's files and goodwill, and in so doing said:
To argue as Dr. Munim does, that the patient files and goodwill of the old P.A. lack value and therefore, could not be the subject of a fraudulent transfer, misses the point. Patients who called for a follow up appointment after November 30th received appointments with the new P.A. which then presumably received a fee for rendering these services. *271 The question on the issue of fraudulent transfer is whether Munim, P.A. transferred its assets to Pulmonary Associates without consideration. The assets could have minimal value and still be considered a fraudulent transfer if the result harmed Dr. Azar by eliminating from the old P.A. its means of earning revenues to pay the judgment.
Dr. Munim's reliance on Thompson v. Thompson, 576 So.2d 267 (Fla.1991) is misplaced. In Thompson, the supreme court, in the context of a divorce proceeding, concluded that a professional association's goodwill had value which could be the subject of distribution as a marital asset. As a practical matter, we note that medical practices, including valuable patient lists, are bought and sold for consideration all the time. The essence of the business of Munim, P.A. was its patients. We thus reject the argument that the medical records and patient files have no inherent value and therefore, could not be the subject of a fraudulent transfer.
648 So.2d at 153.
We agree with the Munim decision, and therefore, reject PRN's argument. Because of the difficulty in proving actual intent of a fraudulent transfer, case law and the UFTA look to indicia of fraudulent intent commonly referred to as "badges of fraud." § 726.105(2), Fla. Stat. (1998); Cleveland Trust Co. v. Foster, 93 So.2d 112 (Fla.1957). The fraudulent nature of the transaction may be found to exist in the transfer of assets of a corporation without consideration or for grossly inadequate consideration to a successor corporation to the prejudice of creditors for the benefit of the same individuals who constitute the beneficial owners of each of the corporations involved. Munim, 648 So.2d at 154. "Ordinarily, the issue of fraud is not a proper subject of a summary judgment. Fraud is a subtle thing, requiring a full explanation of the facts and circumstances of the alleged wrong to determine if they collectively constitute a fraud." Rosen v. Zoberg, 680 So.2d 1050, 1052 (Fla. 3d DCA 1996) (quoting Auto. Sales, Inc. v. Federated Mut. Implement & Hardware Ins. Co., 256 So.2d 386, 386 (Fla. 3d DCA 1972)). In the instant case, at least several "badges of fraud" can be found in the record, including the transfer of DPM's customers, receivables, accounting system and database to PRN without consideration, and the transfer of DPM's vehicles to McKown at far less than fair market value. Only a trial will allow a full explanation of the relationship between DPM and PRN, and a determination of PRN's liability, if any, for DPM's debts.
For the reasons discussed, we conclude that summary judgment was improperly entered and that Lab Corp's claims against PRN should proceed to trial.
REVERSED AND REMANDED.
GRIFFIN and SAWAYA, JJ., concur.
NOTES
[1] Additionally, three vehicles owned by DPM were transferred to McKown without consideration despite the fact that there was allegedly $40,000 equity in the vehicles.