847 So.2d 534 (2003)
KVAERNER CONSTRUCTION, INC., Appellant,
v.
AMERICAN SAFETY CASUALTY INSURANCE COMPANY, Appellee.
No. 5D02-1765.
District Court of Appeal of Florida, Fifth District.
April 17, 2003.
Rehearing Denied June 20, 2003.
*535 A. Anderson B. Dogali and Jane M. Wiederof Forizs & Dogali, P.L., Tampa, for Appellant.
DeWitte Thompson of Thompson & Slagle, P.C., Norcross, GA, for Appellee.
SHARP, W., J.
Kvaerner Construction, Inc. appeals a final summary judgment dismissing its claims against American Safety Casualty Insurance Company, the surety for Kvaerner's subcontractor Steel Tec Construction, Inc. On appeal, Kvaerner argues there are material fact issues which preclude entry of summary judgment.[1] We disagree and affirm.
In July 1998, Kvaerner was hired as the general contractor to build an assisted living facility in Hernando County. A few months later, Kvaerner entered into a $1,173,000 subcontract with Steel Tec for the structural framing and miscellaneous decking and sheathing for the project. The subcontract required Steel Tec to obtain and pay for all necessary permits and licenses for the project and to comply with all federal, state, municipal and local laws and regulations.
The subcontract also required Steel Tec to furnish Kvaerner with a performance and a labor and material bond, which it did through American. The performance bond provides that if Steel Tec performs its subcontract, the bond obligation becomes null and void.[2]
*536 Steel Tec started working on the project in late 1998. In February 1999, Hernando County stopped work on the project because Steel Tec was unlicensed.
Kvaerner declared Steel Tec in default for failure to have a license and other breaches of the subcontract. Kvaerner then demanded American remedy the default under the performance bond. When American declined to do so, Kvaerner filed this lawsuit against American for breach of its bond obligations.
American moved for summary judgment pursuant to section 489.128, which renders contracts by unlicensed contractors unenforceable. American argued Kvaerner hired Steel Tec knowing it was unlicensed. Therefore Kvaerner could not enforce its contract with Steel Tec and consequently cannot recover on the performance bond because American's liability as a surety cannot be greater than that of its principal Steel Tec.
Part one of chapter 489 provides for the licensing, registration and certification of construction contractors. Section 489.128, Florida Statutes (1999) provided:
Contracts performed by unlicenced contractors unenforceable.As a matter of public policy, contracts entered into on or after October 1, 1990, and performed in full or in part by any contractor who fails to obtain or maintain his license in accordance with this part shall be unenforceable in law or in equity. However, in the event the contractor obtains or reinstates his license, the provisions of this section shall no longer apply.[3]
Section 489.128 was enacted to protect the public from the activities of incompetent contractors. See § 489.101 ("The Legislature deems it necessary in the interest of the public health, safety, and welfare to regulate the construction industry"); Castro v. Sangles, 637 So.2d 989 (Fla. 3d DCA 1994). See also Poole & Kent Co. v. Gusi Erickson Const. Co., 759 So.2d 2 (Fla. 2d DCA 1999) (legislative history suggests that section 489.128 was intended to address the problems consumers and the public face due to shoddy work by unlicensed, unqualified contractors).
In Castro, the court recognized a party may recover upon an apparently illegal contract but only if he himself is not guilty of wrongdoing, that is, if he is not in pari delicto[4] with the actual malefactor. In that case, the Castros agreed with Sangles, an unlicensed contractor, to build a duplex on their property for a low price. Castro pulled the building permit, claiming he was the owner/builder and no contractor was involved and signed an affidavit to that effect. When Sangles' construction proved unsatisfactory, the Castros filed suit against him for breach of contract. The trial judge dismissed the lawsuit on the basis that the contract was unenforceable under section 489.128.
On appeal, the court noted Castro was clearly in pari delicto since it was he who, for his own financial gain, made a specific representation to official authorities, under oath, that the building permit was expressly sought by the owner as builder. Castro thus disavowed the existence of the "general contractor" against whom he filed suit. The court agreed that Castro's improper securing of the building permitwhich was contrary not only to his sworn affidavit *537 and the county code but to Chapter 489 itselfprecluded his recovery:
We cannot allow one to invoke the judicial process when, for his own financial benefit, he has participated in the very activity that law precludes, with the resulting danger that the law seeks to avoid.
637 So.2d at 990.
In the present case, Hernando County stopped work on the project because Steel Tec was not licensed as a steel erection contractor, pursuant to ordinances 93-20 and 98-02. Section 7 of ordinance 93-20 requires certificates of competency:
SECTION 7. CERTIFICATES OF COMPETENCY REQUIRED.
All persons or entities shall be duly licensed by all appropriate agencies and authorities of the county and the state. All said persons or entitles shall be in possession of all necessary certificates of competency, registrations, and occupational licenses, prior to engaging in the business, or acting in the capacity of a contractor. Duly licensed contractors or persons exempted by this code are authorized to obtain building permits, and receive inspections. No contractor shall allow any subcontractor to work on any job under the contractors supervision, unless such subcontractor is in possession of all necessary certificates of competency, registrations, and occupational licenses as required by any ordinances, agencies, and authorities of the county and the state. (emphasis added)
Under ordinance 98-02, "Contracting" is defined as follows:

Contracting means, except as exempted in this part, engaging in business as a contractor and includes, but is not limited to, performance of any of the acts as set forth in the definition of "contractor" and "speciality contractor," which define types of contractors....
"Speciality contractor" is defined as a contractor whose scope of work and responsibility is limited to a particular phase of construction described in the following categories. These categories include steel erection contractor:
(15) Steel Erection Contractor means the scope of certification includes and is limited to the execution of contracts requiring the skill, knowledge, ability and experience to install, repair, maintain, and replace, steel framework, columns, sheathing, beams and fabrication of metal buildings.
Kveaerner's subcontract required Steel Tec to furnish all labor, material and equipment to complete the following:
A. Structural steel panels for walls on all floors as required to support the floor and roof decks and in accordance with the design engineer's ultimate criteria. These wall panels may be comprised of 14, 16 or 18 gauge studs, or any combination thereof.
B. Floor decking as may be required to receive concrete flooring materials. This deck may be of corrugated metal or of Epi-Core depending on the design engineer's ultimate conclusions. In either event the Subcontractor agrees to furnish either product within the contract price. If corrugated metal deck is selected, Subcontractor agrees to furnish and install designed floor trusses to support the deck. In every event Subcontractor shall furnish and install metal roof trusses designed for the purposes intended to achieve the roof pitches and design as required.
C. Interior light gauge framing for all walls otherwise not included in the structure. Light gauge framing *538 shall be 25 gauge or as specified by the design engineer.
D. Exterior walls, whether structural or not shall be framed of 20 gauge "C" studs at minimum or larger depending on design engineers preference.
E. All stud sizes shall be governed by design Engineer's and Architects requirements.
F. Installation of Dens-Glass Gold exterior sheathing using fasteners as required to accomplish attachment and wind load criteria as may be specified by design Engineer.
G. Installation of wood subfascia as required by original plans and specifications to allow for the installation of aluminum fascia and soffit. Attachment to metal roof truss tails shall be according to design Engineer's preference and prevailing building code.
H. Install, at the discretion of Architect and Engineer either one layer of 5/8" "X" rated gypsum sheathing of corrugated steel as a sub-sheathing on the metal roof trusses.
I. Included in the proposal are all materials necessary to construct try walkways and porte-cochere canopy at the entryway.
This description of the work required under Steel Tec's subcontract supports the County's requirement for a steel erection contractor license. In any event, some license was clearly required. According to James Friedrichs, the County's contractor certification supervisor, it could be argued Steel Tec had to have a drywall license in addition to the steel erection license. Steel Tec had neither license.
On appeal, Kvaerner claims there was no evidence it knew, prior to the work stop order, that Steel Tec was not duly licensed.
According to Kvaerner, the Hernando County Building Department was uncertain as to what license was required from Steel Tec and promised to get back to them with the answer. Thus even if the contract between Kvaerner and Steel Tec is determined to be illegal because Steel Tec was not licensed, Kvaerner argues it was not guilty of any wrongdoing.
We find this claim to be conclusively refuted by testimony from Steel Tec and Kvaerner employees. Ross Moore, Kvaerner's project superintendent, took other subcontracters such as the plumber and electrician to the Hernando County Building Department to get the proper paperwork. In September 1998, Moore took Steel Tec's owner, Neal Asprea, to the building department for the same purpose:
[W]hen it was Steel Tec's turn, Neal and I went up there to do the same thing, and he didn't have a license. So he asked them, I asked them, what license does he need. So they gave us all of these papers, and they couldn't determine because he was a manufacturer, plus he was an erector. So they said, well, we don't know what category this is, basically we'll get back to you. (emphasis added)
Moore believed Kvaerner knew Steel Tec was working without any sort of a license prior to the work stop order.
At the beginning of the project, Asprea received a contractor's check list from Kvaerner which required the number of his license. Asprea told Kvaerner his license was "pending." Asprea took a metal framing test in 1997; he passed the first part of the test but failed the second part on structural steel. According to Asprea, there is no category for what he does manufacturing and erecting structural light gauge steel. He considers his license to be "pending" until "they come out with the test and I'll take it."
*539 Jeffrey Williams, Kvaerner's project manager, negotiated the subcontract with Steel Tec. Williams had a standard procedure for requesting information from subcontractors to insure they were licensed. Williams admitted he received the transmittal sheet back from Steel Tec which stated its license was "pending." Williams explained he did nothing to follow up with Steel Tec or Hernando County to determine the status of Steel Tec's license during the project:
A. It wouldn'tour activity on that front wouldn't have been after the fact, it would have been before the fact. We would have and did already go to the Hernando County Building Department and we had received from them a list of the folks who they proclaimed needed to be licensed and the tasks that Steel Tec was intended to perform were not listed on there, so we did
Your questions were asked, did we follow up, my answer was no, and the reason is because we'd already done the research and we already had the information and we already believed that there was no requirement.
Q. And you had that information before you signed your contract with Steel Tec?

A. Correct. (emphasis added)
This testimony shows Kvaerner knew Steel Tec had no license even before work started on the project. Kvaerner's argument that it should be absolved from any culpability because Hernando County may have been uncertain as to what license was required is without merit. The county is not privy to the details the contract requires of the parties. That is why typically it is the general contractor's responsibility under the contract with the owner to assure that subcontractors are validly licensed before they start the work. Poole and Kent Co. v. Gusi Erickson Const. Co., 759 So.2d 2 (Fla. 2d DCA 1999).
Kvaerner also argues Steel Tec's status as an unlicensed contractor is of no concern because Kvaerner is not suing Steel Tec to enforce the subcontract but rather is seeking to enforce American's obligations under the bond. Kvaerner points out the purpose of a performance bond is to guarantee the completion of the contract upon default[5] and argues American's obligations are not extinguished by virtue of Steel Tec's unlicensed status.
Under the common law of suretyship, fraud or misrepresentation by the principal in inducing the surety to enter into the contract will not affect the liability of the surety unless there is knowledge or participation by the creditor. American Manufacturing Mutual Insurance Co. v. Tison Hog Market, Inc., 182 F.3d 1284 (11th Cir.1999), cert. denied, 531 U.S. 819 (2000). Here Kvaerner (the creditor) hired Steel Tec knowing it had no license and allowed Steel Tec to work on the project without a license. Under section 489.128, it seems Kvaerner could not enforce its contract with Steel Tec. As a matter of public policy, we hold Kvaerner cannot indirectly recover on that contract by enforcing the performance bond from American.
AFFIRMED.
SAWAYA and ORFINGER, JJ., concur.
NOTES
[1] Summary judgment is of course proper only when there are no disputes of material fact and the movant is entitled to judgment as a matter of law. We review the trial court's entry of summary judgment de novo. Scheibe v. Bank of America, N.A., 822 So.2d 575 (Fla. 5th DCA 2002); Laboratory Corp. of America v. Professional Recovery Network, 813 So.2d 266 (Fla. 5th DCA 2002).
[2] The bond provided:

NOW THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Subcontractor shall promptly and faithfully perform said Subcontract, then this obligation shall be null and void; otherwise it shall remain in full force and effect.
[3] In 2000, the Legislature amended section 489.128 to delete the last sentence, which allowed a contractor to cure its unlicenced status. The Palms v. Magil Construction Florida, Inc., 785 So.2d 597 (Fla. 3d DCA), rev. denied, 805 So.2d 811 (Fla.2001).
[4] "Equally at fault." Black's Law Dictionary.
[5] See, e.g., American Home Assur. Co. v. Larkin General Hosp., Ltd., 593 So.2d 195 (Fla. 1992).