947 So.2d 581 (2007)
KROGEN EXPRESS YACHTS, LLC, Appellant,
v.
Raul NOBILI and Carmella Nobili, Appellees.
No. 4D05-4872.
District Court of Appeal of Florida, Fourth District.
January 3, 2007.
*582 Suzan Jon Jacobs of Levine & Partners, P.A., Miami, for appellant.
Jason L. Weissman and June Galkoski Hoffman of Fowler White Burnett P.A., Miami, for appellees.
KLEIN, J.
After the Nobilis purchased a Krogen yacht, they filed this lawsuit alleging that it was defective. The issue we address on this non-final appeal is whether the appellant, as a successor to the company which sold the yacht, is subject to long-arm jurisdiction in Florida. We conclude that there is no successor corporation liability, because there was neither an assumption of the liabilities of the original corporation, nor was the successor a continuation of the original.
The Nobilis purchased their yacht from Krogen Express Yacht Company (Krogen I). Several months after the Nobilis took delivery of their yacht, Krogen I, a Florida corporation, sold its assets to Krogen Express Yachts, LLC, a Georgia corporation (Krogen II). Significantly, the agreement for sale provided that Krogen II "is not assuming any of the liabilities of Seller whatsoever, whether known or unknown." The purchase price was $500,000.
The Nobilis rely, for their argument that Krogen II is subject to jurisdiction in Florida, on the theories that Krogen II is the successor corporation which assumed the liabilities of Krogen I, or that Krogen II is merely a continuation of Krogen I under a different name. The liability of a successor corporation for the conduct of a predecessor was set out in Bernard v. Kee Manufacturing Co., 409 So.2d 1047 (Fla.1982), in which the Florida Supreme Court held that there is no liability unless:
(1) the successor expressly or impliedly assumes obligations of the predecessor, (2) the transaction is a de facto merger, *583 (3) the successor is a mere continuation of the predecessor, or (4) the transaction is a fraudulent effort to avoid liabilities of the predecessor.
For their argument that Krogen II assumed the liabilities of Krogen I, the Nobilis rely on the following provisions of the asset sale contract between Krogen I and Krogen II:
1. Sale of Business. Except for those assets set forth in Schedule 1, Seller does hereby sell, transfer, assign, and convey to Purchaser all . . . contract rights . . .
5. Acknowledgements of Purchaser. Purchaser acknowledges that:
5.1 Warranty Claims. Two owners of the Krogen Express 49' Cruiser have verbally informed Seller of warranty claims which Seller maintains are unsubstantiated and unfounded . . .
7. Goodwill. The parties agree to each deposit $30,000 in a segregated account for the purpose of covering warranty claims made by an owner of a Krogen Express 49' Cruiser that are beyond Seller's normal warranty period or claims made within the warranty period but not covered by the warranty in order to provide good will to the name "Krogen Express." The coverage and amount of payment of any claims must be agreed to by Purchaser and the director of Seller . . .
They also rely on a letter they received from Krogen II stating:
While we did not produce your yacht, we want you to know that we consider all Krogen Express owners to be a part of the Krogen Express Yachts, LLC family."
As to the first theory argued by the Nobilis, that there was an express or implied assumption of the obligations of Krogen I by Krogen II, the facts that Krogen II knew of the warranty claims, or that Krogen I and Krogen II each left $30,000 in an account for covering warranty claims, are not sufficient to create successor liability. As we explained earlier, the asset sale contract expressly disclaims any successor liability. If the parties wanted to create good will, by setting aside some funds for warranty repairs, that is merely an exception to the provision providing no assumption of liability, and does not in any way nullify it. Nor does the letter telling the Nobilis that, as owners of a Krogen Yacht, they were part of the Krogen II family, create successor liability. The Nobilis have not cited any cases finding successor corporate liability, where there was only an asset sale, with an express disclaimer of successor liability, as in this case.
The Nobilis also argue in the alternative that Krogen II is a mere continuation of Krogen I. They rely on cases such as Laboratory Corp. of America v. Professional Recovery Network, 813 So.2d 266 (Fla. 5th DCA 2002), in which the facts were entirely different. In that case, the first corporation DPM, had McKown as its sole officer and shareholder. Several days after DPM was notified that it was going to be sued for over $500,000, McKown incorporated PRN, with himself as the sole officer and shareholder. He then had the assets of DPM transferred, without consideration, to either PRN or himself personally. The court held that under those circumstances there were issues of fact as to whether PRN was simply a continuation of DPM.
In the present case, Krogen II filed an affidavit of John Tegtmeyer which stated Krogen II was owned 100% by Tegtmeyer and his wife. He stated that Kurt Krogen had maintained a 15% ownership in Krogen II from December 2001 until July 2004, and at all other times, Tegtmeyer *584 and his wife had been the sole owners of Krogen II. Krogen II also filed an affidavit of Kurt Krogen, which provided that at the time Krogen II purchased the assets of Krogen I, Krogen I was owned entirely by three shareholders, Krogen, Judd Straus and M.F. Labbee. The Tegtmeyers had never had any connection with Krogen I.
The trial court found that these affidavits were "incompetent," in light of a letter from the Tegtmeyers to the Nobilis in April, 2002, which stated that Krogen II had purchased most of the assets of Krogen I and that Kurt Krogen had joined Krogen II as "an equity partner and consultant." The trial court also relied on a press release to the same effect. The letter and press release, however, did not create any issue as to the fact that the Tegtmeyers were at all times majority owners of Krogen II and never involved in any way in Krogen I. There are no affidavits or other evidence in the record to contradict either the facts as to who were the owners and the officers of the two corporations, or as to the bonafides of the asset sale of $500,000. Under these circumstances, neither Laboratory Corp., nor any of the other cases relied on by the Nobilis, would support their theory that Krogen II is a mere continuation of Krogen I.
Reversed.
HAZOURI and MAY, JJ., concur.