EVANDER, J.
These are consolidated appeals in which Boatwright Construction, LLC (“Boat-wright”), the plaintiff below, appeals from an order granting Scott R. Tarr’s (“Tarr”), motion for judgment on the pleadings and Tarr appeals from an order denying his motion for attorney’s fees.[1] We affirm, in part, and reverse, in part.
For purposes of this appeal, we must accept all well-pled factual allegations of Boatwright’s amended complaint as true. See Plumbing Serv. Co. v. Progressive Plumbing, Inc., 952 So.2d 1211 (Fla. 5th DCA 2007); Covert v. South Florida Stadium Corp., 762 So.2d 938, 939 (Fla. 3d DCA 2000). The moving party carries a heavy burden and must be clearly entitled to relief based on the facts pled. Covert. The applicable standard of review of a trial court’s decision granting a judgment on the pleadings is de novo review. Thompson v. Napotnik, 923 So.2d 537 (Fla. 5th DCA 2006).
On October 23, 2000, Boatwright entered into a contract with GMRI, Inc. (“GMRI”), whereby GMRI agreed to pay Boatwright 1.4 million dollars to construct a restaurant on property owned by GMRI. The property was located in Orlando, Florida. Prior to entering this contract, Boat-wright had constructed restaurants throughout the United States. However, Boatwright was not licensed as a contractor in Florida. Boatwright was aware that it would need a contractor licensed in the State of Florida to act as its qualifying agent.
In November, 2000, Boatwright and Tarr entered into an agreement whereby Tarr, who was a Florida-licensed contractor, would obtain the necessary building permits for this project. Tarr would be paid $2,500 for his agreement to serve as Boatwright’s “qualifying agent,” and for his services in obtaining the necessary building permits.
In December, 2000, Tarr successfully obtained the permits necessary to commence construction of the restaurant. Boatwright paid Tarr the agreed-upon fee.
By April 27, 2001, the project was approximately 98% complete. As of that date, Tarr had not performed any supervisory duties at the job site.
*1073 Around this time, the Florida Department of Business and Professional Regulation contacted Boatwright and Tarr as part of its investigation of a complaint that Boatwright was illegally performing construction work without a Florida contractor’s license. On May 2, 2001, Tarr submitted an affidavit to the Department of Business and Professional Regulation, averring that he had “unknowingly pulled a permit for which [he was] not authorized to pull on behalf of Boatwright Construction.” He further acknowledged in his affidavit that he had not performed the duties required of a qualifying agent. Specifically, as the qualifying agent, Tarr had a legal obligation to supervise the field work.
The responsibilities of a qualifying agent are set forth in section 489.1195, Florida Statutes (2000). It is clear from the pleadings that the contract between Tarr and Boatwright did not contemplate that Tarr would perform the statutorily-required duties of a qualifying agent.
When GMRI learned of the investigation, it sought to ensure that the project would be completed without undue delay. As a result, three agreements were entered into. The first agreement titled “Acknowledgment and Affirmation,” was entered into by GMRI and Tarr. Pursuant to the terms of this agreement, Tarr agreed, for “good and valuable consideration,” to complete the project as the general contractor. Tarr also agreed to be responsible for any construction defects in the project to the same extent as if he had been the original general contractor. The second agreement, titled “Guaranty of Performance,” was executed by GMRI, Boat-wright and Tarr. For “good and valuable consideration,” Boatwright agreed to guaranty the performance of Tarr’s obligation under the Acknowledgment and Affirmation. Paragraph 2 of the Guaranty of Performance, specifically provided:
If for any reason whatsoever, TARR shall fail or refuse to fully perform all duties, responsibilities and obligations under the Acknowledgment, then BOATWRIGHT agrees to fully reimburse GMRI, immediately upon demand for same, for any and all expenses or costs incurred by GMRI as a result of such breach by TARR, including but not limited to all attorneys’ fees and costs expended by GMRI in such endeavors.
The third agreement was a verbal agreement between Boatwright and Tarr. Pursuant to this agreement, Tarr agreed to endorse all checks it received from GMRI to Boatwright, in return for Boat-wright’s agreement to hold Tarr harmless from any and all claims arising from Tarr’s involvement in the project. Although this agreement was not reduced to writing, Tarr did send a letter to GMRI on May 25, 2001, stating:
As per my discussion with [Boat-wright] all final payments due to Boat-wright Construction must be made payable to me. Once I receive my hold harmless agreement from Mr. Boat-wright, I will then endorse the final check over to Boatwright Construction.
Boatwright subsequently provided Tarr with the hold harmless agreement and Tarr endorsed the first three checks it received from GMRI to Boatwright. (These three checks total approximately $868,000.) However, Tarr refused to endorse the final check it received from GMRI to Boatwright. This check was in the amount of $201,740.94.
Boatwright commenced this litigation on August 30, 2004. The amended complaint included counts for 1) breach of contract, 2) breach of fiduciary duty, 3) unjust enrichment, and 4) breach of a contract of *1074 which Boatwright was a third party beneficiary.
Tarr filed an answer generally denying the allegations of the amended complaint. As one of its affirmative defenses, Tan-pled that “any alleged agreement, new agreement or novation between the parties was illegal or void and unenforceable as being against public policy.” Tarr also filed a motion for judgment on the pleadings, contending that Boatwright’s amended complaint “fails to state and cannot state a cause of action.” (emphasis added).
After considering the parties’ arguments, the trial court entered a very detailed and thorough order. We note that the trial court’s job was made more difficult because Boatwright’s amended complaint can, at best, be described as “inart-fully drafted.” In particular, it is difficult to ascertain whether Boatwright’s breach of contract count was based on Tarr’s alleged breach of the initial contract whereby Tarr agreed to obtain the building permits for a $2,500 fee, or whether the count was based on an alleged breach of the subsequent agreement whereby Tarr agreed to endorse to Boatwright all checks it received from GMRI in return for a hold harmless agreement.
In its order, the trial court correctly noted that a motion for judgment on the pleadings must be decided solely upon review of the pleadings, and may be granted only if the moving party is clearly entitled to judgment as a matter of law. Tanglewood Mobile Sales, Inc. v. Hachem, 805 So.2d 54, 55 (Fla. 2d DCA 2001). The trial court found that pursuant to section 489.128, Florida Statutes (2000),[2] the initial contract between Boatwright and GMRI was unenforceable because Boatwright was not a licensed contractor. Citing to Deep South Systems., Inc. v. Heath, 843 So.2d 378 (Fla. 2d DCA 2003), the trial court correctly observed that Boatwright could not have successfully brought an action against GMRI to recover monies for work performed by Boatwright on the project. The trial court then concluded that regardless of the theory advanced by Boatwright, it could not recover for work performed on the project. Specifically, the court stated that Boatwright could not “recover indirectly what it could not recover directly.” The trial court recognized that the effect of its decision would be to arguably grant a windfall to another wrongdoer.
We agree with most, but not all, of the trial court’s conclusions. First, we affirm the trial court’s order granting judgment on the pleadings as to the breach of fiduciary duty, unjust enrichment, and third party beneficiary counts. However, we reverse the trial court’s order as to the breach of contract count. For the reasons set forth below, we find that the second contract alleged to have been entered into by Tarr and Boatwright was a legal and enforceable contract.
Section 489.128, Florida Statutes (2000)[3] provides:
As a matter of public policy, contracts entered into on or after October 1, 1990, and performed in full or in part by any contractor who fails to obtain or maintain a license in accordance with this part shall be unenforceable in law or in equity.
*1075 Thus, as observed by the trial court, Boat-wright could not have successfully brought an action against GMRI to recover monies for work allegedly performed under their contract. See Deep South Systems, Inc.; Kvaerner Const., Inc. v. American Safety Cas. Ins. Co., 847 So.2d 534 (Fla. 5th DCA 2003). Furthermore, it is questionable whether GMRI could have successfully brought an action against Boatwright if Boatwright had failed to properly perform its contractual obligations. See, e.g., Castro v. Sangles, 637 So.2d 989 (Fla. 3d DCA 1994).
Boatwright’s initial contract with Tarr was also illegal and unenforceable. See § 489.127(4)(a) and (b), Fla. Stat. (2000); RTM General Contractors, Inc. v. G/W Riverwalk, LLC, 893 So.2d 583 (Fla. 2d DCA 2004), rev. denied, 902 So.2d 791 (Fla.2005). However, merely because Boatwright’s initial contracts with GMRI and Tarr were illegal, it does not necessarily follow that the second contract between Boatwright and Tarr was illegal. Indeed, according to the amended complaint, GMRI, Boatwright, and Tarr entered into new agreements in May, 2001, for the purpose of remedying the situation caused by their initial illegal contracts.
As the individual who obtained the building permit, Tarr had potential liability to any third persons who suffered personal injuries as a result of any defects resulting from the negligent construction of the restaurant. See ABD Const. Co. v. Diaz, 712 So.2d 1146 (Fla. 3d DCA 1998)(contractor acting as qualifying agent for out-of-state company generally liable for injuries arising from construction, citing section 489.105(4), Florida Statutes (2000)). Furthermore, as a result of the Acknowledgement and Affirmation agreement entered into by GMRI and Tarr, Tarr was potentially liable to GMRI for any failure by Boatwright and/or Tarr to construct the restaurant in accordance with the terms of the original construction contract.
Prior to entering into the second contract with Tarr, Boatwright was not obligated to hold Tarr harmless from all potential claims made against Tarr by GMRI or an injured third party. Therefore, Boatwright’s agreement to hold Tarr harmless for any and all claims that might be brought against Tarr arising from Tarr’s involvement with the project was new and legal consideration given in return for Tarr’s promise to endorse to Boat-wright any checks it might receive from GMRI. Although GMRI may not have been obligated to pay Tarr any monies, it did so. Once Tarr received these monies, he was obligated to pay the monies to Boatwright. The consideration for these monies was not work illegally performed by Boatwright on the project. The consideration for these monies was the hold harmless agreement given to Tarr by Boatwright. Again, we emphasize that our conclusions are based on the assumption that Boatwright’s factual allegations are true and correct.
We find Tarr’s appeal to be without merit. On remand, Boatwright should be given the opportunity to amend its breach of contract count so that it is clear Boat-wright’s cause of action is based on the alleged second contract between Boat-wright and Tarr.
AFFIRMED, in part; REVERSED, in part; REMANDED.
GRIFFIN and PALMER, JJ„ concur.

. Tarr sought attorney's fees pursuant to section 57.105, Fla. Stat. (2004).

. Effective July 1, 2000.

. Section 489.128 was amended effective April 13, 2007. See Ch.2007-5, 2007, Fla. Session Law Service. The section now provides:
As a matter of public policy, contracts entered into on or after October 1, 1990, by an unlicensed contractor shall be unenforceable in law or in equity by the unlicensed contractor, (emphasis added)