DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**DEUTSCHE BANK TRUST COMPANY AMERICAS,** as Trustee for
**RESIDENTIAL ACCREDIT LOANS, INC., MORTGAGE ASSET-BACKED
PASS-THROUGH CERTIFICATES, SERIES 2005-QS12,**
Appellant,

v.

**CHRISTOPHER HARRIS** a/k/a **CHRISTOPHER E. HARRIS,**
Appellee.

No. 4D17-3009

[January 23, 2019]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Dina Keever-Agrama, Judge; L.T. Case No. 50-2015-CA-005832-XXXX-MB.

A. Donald Scott, Jr. of McCabe, Weisberg & Conway, LLC, West Palm Beach, and Jacqueline J. Brown and Sean P. Belmudez of McCabe, Weisberg & Conway, LLC, Tampa, for appellant.

Samantha Neides of Loan Lawyers, LLC, Fort Lauderdale, for appellee.

CONNER, J.

Deutsche Bank Trust Company Americas, as Trustee For Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-QS12 ("the Bank") appeals the trial court's final order granting Christopher Harris's ("the borrower's") motion for involuntary dismissal of the mortgage foreclosure proceedings at the close of the Bank's case-in-chief. Involuntary dismissal was granted after the trial court agreed with the borrower that the Bank failed to present sufficient evidence of its standing as holder of the note and compliance with the condition precedent that notice of default and acceleration was mailed. We determine that the trial court erred in concluding the Bank failed to present a prima facie case supporting foreclosure. Thus, we reverse the dismissal and remand the case for further proceedings.

*Background*

The Bank filed its foreclosure complaint alleging that it was the holder of the original note and that all conditions precedent to foreclosure of the mortgage had occurred. The complaint also alleged that Ocwen Loan Servicing, LLC ("Ocwen") was the servicer for this particular loan pursuant to a limited power of attorney.

Attached to the complaint was a copy of the note and mortgage. The copy of the note reflected that the original lender was Homecomings Financial Network, Inc. The copy contained two indorsements: (1) from the original lender to Residential Funding Corporation, and (2) from Residential Funding Corporation to "Deutsche Bank Trust Company Americas *as Trustee.*" (emphasis added). Additionally, on the following page of the copy of the note was a copy of an allonge made by "Deutsche Bank Trust Company Americas *as Trustee by its attorney in fact, Ocwen Loan Servicing, LLC*" to "Deutsche Bank Trust Company Americas, as Trustee for Residential Accredit Loans, Inc. Mortgage Asset-Backed Pass Through Certificates, Series 2005-QS12," which is the trust series involved in this case. (emphasis added). Also attached to the complaint was a copy of a limited power of attorney between the Bank and Ocwen, containing an addendum identifying the trust series involved in this case.

The borrower filed his answer to the complaint, raising two affirmative defenses pertinent to this appeal: lack of standing and failure to comply with conditions precedent by not providing the borrower with a notice of default and intent to accelerate.

The matter proceeded to a nonjury trial, where the Bank's sole witness was a senior loan analyst for Ocwen. The Bank entered into evidence the original note and allonge, the original mortgage, and the limited power of attorney, which the witness testified gave Ocwen the authority to service the subject loan and take any actions that are necessary in the foreclosure, such as adding an indorsement to a note. The witness testified that the original note was sent to the Bank's counsel prior to the suit, and a bailee letter predating the complaint was admitted into evidence without objection.

The Bank also entered into evidence a pooling and servicing agreement with a closing date of August 2005, which was prior to the filing date of the suit, along with the mortgage loan schedule containing the subject loan. Finally, the Bank entered into evidence a default letter, giving notice of default and acceleration, discussed more fully below.

2

After the Bank rested its case and before the presentation of any evidence by the borrower, the borrower moved for an involuntary dismissal, which the trial court granted. The trial court concluded that the evidence did not establish that the allonge placed the note and mortgage into the trust pool in a timely fashion and that comment log in evidence sufficiently proved the default letter was mailed. After the trial court entered a final order of dismissal, the Bank gave notice of appeal.

*Appellate Analysis*

The "standard of review for a motion for involuntary dismissal is de novo." *Deutsche Bank Nat'l Tr. Co. v. Huber*, 137 So. 3d 562, 563 (Fla. 4th DCA 2014).

> When an appellate court reviews the grant of a motion for involuntary dismissal, it must view the evidence and all inferences of fact in a light most favorable to the nonmoving party, and can affirm a directed verdict only where no proper view of the evidence could sustain a verdict in favor of the nonmoving party.

*Id.* at 563-64 (quoting *Deutsche Bank Nat'l Tr. Co. v. Clarke*, 87 So. 3d 58, 60 (Fla. 4th DCA 2012)).

> When a party raises a motion for involuntary dismissal in a nonjury trial "the movant admits the truth of all facts in evidence and every reasonable conclusion or inference based thereon favorable to the non-moving party. Where the plaintiff has presented a prima facie case and different conclusions or inferences can be drawn from the evidence, the trial judge should not grant a motion for involuntary dismissal."

*Deutsche Bank Nat'l Tr. Co. v. Kummer*, 195 So. 3d 1173, 1175 (Fla. 2d DCA 2016) (quoting *Day v. Amini*, 550 So. 2d 169, 171 (Fla. 2d DCA 1989)).

*Standing*

At the close of the Bank's case-in-chief, the borrower argued that there was no evidence that the limited power of attorney and the pooling and servicing agreement gave Ocwen the authority to create an allonge indorsing the note to the Bank as trustee for the subject trust series. The borrower further argued that even if Ocwen had the authority to create the allonge, because the power of attorney was effective in April 2013 and the closing date of the pooling and servicing agreement was August 2005,

there was no evidence that the note was indorsed to the trustee of the specific trust prior to the trust closing.

In response, the Bank argued the pooling and servicing agreement permitted the trustee to give authority to its agent, Ocwen, to indorse the note and that this authority was given in the limited power of attorney, which included actions necessary for the completion of the loan assumption agreement. The Bank further argued that the allonge was intended to provide a more complete name of the trust, and maintained that even if the allonge was not effective, the Bank would still have standing.

In granting dismissal, the trial court reasoned that while it agreed that Ocwen was given the authority to execute the allonge based on the limited power of attorney, it did not seem that Ocwen had the authority to do so when it did, referencing the pooling and servicing agreement's 2005 closing date.

Standing of the plaintiff to foreclose on a mortgage must be established at the time the plaintiff files suit. *McLean v. JP Morgan Chase Bank Nat'l Ass'n*, 79 So. 3d 170, 173 (Fla. 4th DCA 2012); *Rigby v. Wells Fargo Bank, N.A.*, 84 So. 3d 1195, 1196 (Fla. 4th DCA 2012). Here, the Bank filed its complaint, alleging its status as the holder of the note. A "holder" is defined as: "The person in *possession* of a negotiable instrument that is payable either to bearer or *to an identified person that is the person in possession*." § 671.201(21)(a), Fla. Stat. (2017) (emphases added). On appeal, as below, the Bank asserts that its standing was established by the application of *Ortiz v. PNC Bank, National Ass'n*, 188 So. 3d 923 (Fla. 4th DCA 2016).

In *Ortiz*, we explained that:

> We recognize the fact that a copy of a note is attached to a complaint does not conclusively or necessarily prove that the Bank had actual possession of the note at the time the complaint was filed. *However, if the Bank later files with the court the original note in the same condition as the copy attached to the complaint, then we agree that the combination of such evidence is sufficient to establish that the Bank had actual possession of the note at the time the complaint was filed and, therefore, had standing to bring the foreclosure action, absent any testimony or evidence to the contrary.*

*Id.* at 925 (emphasis added).

4

Relying on *Ortiz*, the Bank argues that the trial court erred in dismissing the case because both the original note and the copy attached to the complaint reflected indorsements: (1) from the original lender to Residential Funding Corporation, and (2) from Residential Funding Corporation to Deutsche Bank Trust Company Americas as Trustee. Additionally, the Bank argues that the allonge attached to the note, a copy of which was attached to the complaint, included an indorsement by Deutsche Bank Trust Company Americas as Trustee by its attorney in fact, Ocwen, to Deutsche Bank Trust Company Americas, as Trustee for the pool of mortgages. As argued below, the Bank contends that regardless of the validity or the effect of the allonge to show the Bank's standing with respect to a specific trust, the record reflects that the note has a specific indorsement to "Deutsche Bank Trust Company Americas *as Trustee*," which is sufficient by itself to establish its standing.

We agree with the Bank that an indorsement to a trustee is sufficient to establish standing to foreclose, in terms of the identity of the person or entity entitled to enforce the note, regardless of whether the identity of the trust is clear from note, together with any indorsements or allonges. Section 673.1101, Florida Statutes (2017), provides that:

> (3) A person to whom an instrument is payable may be identified in any way, including by name, identifying number, office, or account number. For the purpose of determining the holder of an instrument, the following rules apply:
>
> . . . .
>
> (b) If an instrument is payable to:
>
> 1. A trust, an estate, or a person described as trustee or representative of a trust or estate, *the instrument is payable to the trustee*, the representative, or a successor of either, *whether or not the beneficiary or estate is also named*[.]

§ 673.1101(3)(b)(1), Fla. Stat. (emphases added). We have recently explained that proof of the trust on whose behalf the plaintiff acts is not necessary to establish the plaintiff's standing:

> Here, the special endorsement on the note is in favor of the Bank, and Ginsberg offered no evidence to show the Bank lacked possession of the note at the time it filed the complaint. *To prove standing, a plaintiff is not required to identify or prove the trust on whose behalf the plaintiff acts. See* [*McLean*, 79 So. 3d at 173]. Thus, in this case, the fact that the trust identified

> in the complaint is somewhat different from the trust identified in the special endorsement does not create a defect in standing. *See also* Fla. R. Civ. P. 1.120(a) ("It is not necessary to aver the capacity of a party to sue or be sued . . . except to the extent required to show the jurisdiction of the court.").

*Bank of N.Y. Mellon Tr. Co., Nat'l Ass'n v. Ginsberg*, 221 So. 3d 1196, 1197 (Fla. 4th DCA 2017), *rev. denied sub nom. Ginsberg v. Bank of N.Y. Mellon Tr. Co., N.A.*, No. SC17-1468, 2018 WL 503421 (Fla. Jan. 22, 2018) (emphasis added).

Notably, the borrower's reliance on our opinion in *Bolous v. U.S. Bank National Ass'n*, 210 So. 3d 691 (Fla. 4th DCA 2016), in support of his position concerning whether the allonge properly indorsed the note to the trust under the terms of the pooling and servicing agreement, is misplaced. In *Bolous*, the bank could not rely on *Ortiz* to establish its standing because the note attached to the original complaint was not indorsed. *Id.* at 691. Furthermore, as the Bank points out, where the borrower is neither a party to nor a third-party beneficiary of the trust, the borrower lacks standing to raise an issue as to the Bank's compliance with its pooling and servicing agreement when it took possession of the original note and mortgage. *See Citibank, N.A. v. Olsak*, 208 So. 3d 227, 230 (Fla. 3d DCA 2016), *reh'g denied* (Dec. 21, 2016), *rev. denied*, No. SC17-10, 2017 WL 2590706 (Fla. June 15, 2017) ("Florida courts have repeatedly held that borrowers cannot defeat a foreclosure plaintiff's standing by relying upon trust documents to which the borrower is not a party."); *Castillo v. Deutsche Bank Nat'l Tr. Co.*, 89 So. 3d 1069 (Fla. 3d DCA 2012). However, even putting aside the borrower's lack of standing to make this challenge, the record nevertheless reflects the note was properly indorsed to the *trustee*, as required by the section of the pooling and servicing agreement cited by the borrower.

Based on the foregoing, the record reflects the Bank presented prima facie evidence of its status as the holder, specifically as the entity "in *possession* of a negotiable instrument that is *payable . . . to an identified [entity] that is the [entity] in possession*," such that the trial court should have denied the motion for involuntary dismissal at the close of the plaintiff's case. *See* § 671.201(21)(a), Fla. Stat. (emphases added). Additionally, the Bank presented other evidence of its possession of the note where it introduced evidence of the attorney bailee letter, reflecting that the original note was sent to the Bank's counsel prior to the initiation of the suit. Finally, we note that neither below nor on appeal has the borrower challenged the Bank's possession of the note with regard to standing.

Having determined that the trial court erred by involuntarily dismissing the case at the close of the Bank's case-in-chief on the issue of standing, we reverse the trial court's ruling as to that issue.

*Compliance with the Condition Precedent of Mailing Notice*

With regard to the condition precedent of mailing the notice of default and acceleration, the borrower moved for dismissal arguing that the Bank's witness was not familiar with the policies and procedures of the third-party vendor that Ocwen utilized to send out the demand letter and that there was no evidence the letter had been sent.

In response, the Bank argued that the witness testified to Ocwen's procedures for creating the demand letter and having it sent to the borrower and also testified that the collection notes reflected that the letter was sent. The Bank further argued that because there was no evidence that the letter was not received, it was proper to rely on the witness's testimony as to Ocwen's practices and procedures for giving the required notice.

In granting dismissal, the trial court reasoned that the witness was not familiar with the third-party vendor's mailing practices and that the note in the comment log regarding the mailing was vague.

On appeal, the Bank argues that its witness testified that it was Ocwen's practice and procedure for an Ocwen employee to generate the letter notifying the borrower of the default and demanding payment of the delinquent amounts to avoid acceleration of the note and foreclosure. The witness explained that the Ocwen employee

> computes all the numbers that need to be in there, and creates the demand letter and sends the information to the third-party vendor to print and mail that demand letter to the borrower.

> Once the demand is sent to the borrower an e-mail or note comes back to the agent that is from the foreclosure department, and an e-mail is sent to the pre-foreclosure department, letting them know the letter is mailed to the borrower.

The witness further testified that a comment log in reference to the demand letter is generated and placed into Ocwen's data system after the third-party vendor confirms the letter has been mailed. The witness testified that the comment log in this case bore the same date of the

demand letter. The demand letter and comment log were admitted into evidence. The comment log reflected the code "D19" with the description "BREACH CHRISTOPHER HAR." The witness testified that the code "D19" in the comment log is what is entered into Ocwen's system indicating the letter had been mailed to the borrower and confirmed that this note would not be in the system if the letter had not been sent.

On cross-examination, the witness could not recall the name of the third-party vendor that Ocwen utilized to mail out the letters and testified he was not familiar with the third-party vendor's policies and procedures for doing so. In granting the borrower's motion for involuntary dismissal, the trial court cited the witness's unfamiliarity with the third-party vendor's mailing practices and reasoned that the note in the comment log, which stated "breach Christopher Harris," appeared "vague," even though the witness testified that this meant the breach letter was sent to Christopher Harris, the borrower.

On appeal, the Bank correctly argues that it was unnecessary for its witness to testify regarding his knowledge of the third-party vendor's mailing practices to establish that the demand letter had been sent. We recently addressed this issue in *Wells Fargo Bank, N.A. v. Balkissoon*, 183 So. 3d 1272 (Fla. 4th DCA 2016), in a somewhat different context. In *Balkissoon*, we held that the servicer's representative, although unfamiliar with the third-party vendor's practices and procedures, properly laid the foundation for the admission of the demand letter where he "demonstrated that he was sufficiently familiar with [the *servicer's*] practice and procedure for generating and sending the default notice." *Id.* at 1277 (emphasis added). Specifically, the witness:

> testified that the notice was made at or near the time of the events reflected therein and made by or from information transmitted by people with knowledge. Each night, [the servicer] transmitted the information for loans in default to [the third-party vendor] over a secure connection. [The third-party vendor] used [the servicer's] template to create the notice within two days of receiving the loan information. [The third-party vendor] did not generate any of the information in the notice. [The witness] testified that the copy of the notice was kept in the ordinary course of [the servicer's] regularly conducted business activity and it was the regular practice of [the servicer] to make this record. Once [the third-party vendor] generated the notice and mailed it, [the servicer] kept a copy of the notice in its records and made a note of the mailing date.

8

*Id.*

Although the issue in this case is whether the Bank presented evidence that the letter was mailed, and not the admissibility of the letter into evidence, as was the issue in *Balkinsoon*, the testimony in this case was sufficient. The witness testified that Ocwen actually creates the letters with the requisite information and sends them electronically to the third-party vendor to print and send the letters out. Upon mailing, Ocwen receives a notification from the third-party vendor, and someone from Ocwen's pre-foreclosure department enters a note into the system indicating that the demand letter has been mailed. The witness also testified that the comment log, which was admitted into evidence, reflected that the letter in this case had indeed been mailed to the borrower. Therefore, our review of the record in this case leads us to conclude that sufficient evidence was presented to preclude an involuntary dismissal at the close of the Bank's case-in-chief on the issue of whether a prima facie showing was made that the demand letter was mailed to the borrower prior to the filing of the suit. Thus, we reverse the trial court's ruling on this issue as well.

*Conclusion*

Having determined that the trial court erred in granting the motion for involuntary dismissal at the close of the Bank's case-in-chief, we reverse the trial court's final order of dismissal and remand the case for further proceedings.

*Reversed and remanded.*

TAYLOR and CIKLIN, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***

9