DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**RICHARD HERMAN** d/b/a **H & H COFFEE AND WATER,**
Appellant,

v.

**JOSEPH LOPEZ, SAN GIORGIO COFFEE, LLC,** and
**MIA COFFEE DISTRIBUTORS, INC.,**
Appellees.

No. 4D2023-2414

[January 22, 2025]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; John Bowman, Judge; L.T. Case No. CACE20-2265.

Scott J. Edwards of Scott J. Edwards, P.A., Boca Raton, and Andrew Rader of Rader Law Group, P.L., Coral Springs, for appellant.

Adam I. Skolnik of the Law Office of Adam I. Skolnik, P.A., Deerfield Beach, for appellees.

WARNER, J.

Appellant challenges the directed verdict entered against him on his complaint seeking unpaid commissions from appellees Mia Coffee and Joseph Lopez, Mia Coffee's owner. We conclude that the trial court erred in granting the directed verdict as to the breach of contract counts against Mia Coffee, because the evidence presented was sufficient to support appellant's claim that Mia Coffee owed the commissions as an assignee of the contract which appellant had made with Mia Coffee's predecessor. Thus, we reverse on the breach of contract claim against Mia Coffee. We affirm as to the remaining claims against both appellees.

Appellant entered a contract (the "Commission Contract") with San Giorgio Coffee, where appellant would refer customers to San Giorgio for a 5% commission on all sales generated by these referrals. Appellant signed the Commission Contract on behalf of himself and his company, H & H Coffee & Water, and Joseph Lopez signed on behalf of San Giorgio. The Commission Contract included a list of four customers that appellant had

referred to San Giorgio, and this list was amended later to add a fifth customer, Performance Food Group ("PFG").

San Giorgio paid commissions for several years, until it informed appellant that it could no longer pay the 5% and reduced it to 2.5%, to which appellant objected. Thereafter, Lopez established Mia Coffee, and at some point replaced San Giorgio as PFG's coffee supplier.

When Mia Coffee refused to pay the commissions on the sales to PFG, appellant filed suit. In the complaint, appellant brought claims for breach of contract against San Giorgio, Mia Coffee, and Lopez; a claim for unjust enrichment against Mia Coffee; claims for breach of contract based on actual or constructive assignment against Lopez and Mia Coffee; claims for intentional and constructive fraudulent transfer against Lopez for transferring San Giorgio assets to himself; claims against Lopez and Mia Coffee for intentional and constructive fraudulent transfer for failure to properly wind up San Giorgio; a claim for receipt of constructive fraudulent transfer against Mia Coffee; a claim for improper distributions against Lopez; and a claim for tortious interference with a contract against Lopez. The claims alleged that Lopez had dissolved San Giorgio and assigned its agreement with PFG, one of appellant's referrals governed by the Commission Contract, to Lopez's new company, Mia Coffee. Some of the commissions which San Giorgio owed appellant went unpaid, as well as all of the commissions which Mia Coffee owed appellant under the Commission Contract. Essentially, appellant alleged that Lopez had tried to illegally escape the Commission Contract by forming a new company to conduct the same business from appellant's referral without paying appellant any commissions.

Lopez filed an answer and affirmative defenses on behalf of himself and Mia Coffee, alleging that the Commission Contract was no longer enforceable after San Giorgio's dissolution. Lopez also asserted that he was not an owner of San Giorgio, and neither Lopez nor Mia Coffee had entered an agreement with appellant. Appellant replied, generally denying Lopez's affirmative defenses.

San Giorgio never answered the complaint, and appellant successfully moved to default San Giorgio, which is not challenged on appeal. The case proceeded to a jury trial against Lopez and Mia Coffee.

Appellant testified to the formation of the contract for commissions. Lopez represented to appellant that he was the owner of San Giorgio. Appellant's only responsibility under the Commission Contract was to initiate a business relationship between San Giorgio and coffee buyers.

2

When appellant referred PFG to San Giorgio as a customer, the contract between PFG and San Giorgio was signed by Lopez as "owner and partner."

Appellant introduced an email that Lopez had sent to PFG, informing PFG that his company was changing its name to Mia Coffee Distributors, Inc. Appellant also introduced a letter that Mia Coffee had sent to its customers, which reiterated the name change:

> Dear Customers,
>
> As our new letterhead indicates, we have recently changed the name of our business from San Giorgio Coffee, LLC to Mia Coffee Distributors, Inc. We would appreciate it if you would bring this announcement to the attention of your accounts payable department and direct them accordingly.
>
> Thank you for being one of our valued customers. We appreciate your cooperation in this matter.

The letter was signed by Lopez, as "President, Mia Coffee Distributors," and by Mia Coffee's officer manager.

Appellant also introduced a contract labelled "Assumption of Foodservice Products Supplier Agreement" (the "Assumption Agreement") which provided that Mia Coffee was an assignee of San Giorgio's product supplier contract with PFG and that "[Mia Coffee] hereby agrees to perform all of the obligations of [San Giorgio] under the Agreement, and [PFG] agrees to perform all of its obligations under the Agreement for the benefit of [Mia Coffee]." The Assumption Agreement also provided that "pursuant to a transaction completed in April of 2018, [Mia Coffee] acquired some or all of the business of [San Giorgio], and in the scope of such transaction [San Giorgio] and [Mia Coffee] agreed that [Mia Coffee] would assume all or some of the obligations of [San Giorgio]."

Appellant introduced ledgers reflecting what PFG had paid San Giorgio and then Mia Coffee between 2016 and 2023. He calculated his 5% share and testified to the amount owed. Appellant then rested, and the defense did not move for directed verdict.

In the defense case, Lopez testified that while he had been a 25% owner of a predecessor company, he brought together a group of investors to buy out the predecessor and start San Giorgio LLC, the company involved in this case. He was an employee of San Giorgio but did not have any

ownership interest. Lopez served several roles at San Giorgio and testified that he was "the face" of San Giorgio.

Lopez admitted that he had lied to appellant when they negotiated the Commission Contract and represented himself as the owner of San Giorgio. Lopez also knowingly misrepresented himself as the owner of San Giorgio in executing the supplier agreement with PFG. While Lopez thought that appellant would do more than refer a customer to earn a commission, he admitted that the contract did not require any further effort on appellant's behalf.

Lopez left San Giorgio in late January 2016, and started Mia Coffee in March 2016. Lopez called appellant and told him he was leaving San Giorgio. Lopez told appellant that San Giorgio did not have money and was closing down. Lopez did not talk with appellant again after this conversation.

When Lopez founded Mia Coffee, he contacted all of San Giorgio's customers to try and acquire their accounts. At some point, Mia Coffee replaced San Giorgio as PFG's coffee supplier. PFG asked Lopez to draft a letter informing customers that San Giorgio was changing its name to Mia Coffee so that PFG would not lose customers. Although Lopez was neither an owner nor a partner of San Giorgio, he signed the letter as "owner and partner" with the actual owners' permission. Lopez testified that the letter was not truthful about San Giorgio simply changing its name to Mia Coffee.

Appellant never executed a sales commission contract with Mia Coffee. Lopez agreed that appellant did not receive any commission for sales that Mia Coffee made to PFG.

After Lopez rested, he moved for a directed verdict on all counts against himself and Mia Coffee. Lopez argued that appellant had not put forth a prima facie case that Lopez was an owner of San Giorgio or that he had personally benefitted from the Commission Contract, so no grounds existed to sue him for any breach of contract. He also argued that no breach of contract or unjust enrichment claims existed against Mia Coffee because Mia Coffee and appellant did not have any agreement. Relevant to the issues raised in this appeal, Lopez argued that because appellant had not shown the Commission Contract was assigned to Mia Coffee, no constructive breach of contract based upon an assignment had occurred.

Appellant argued Lopez's admission that he had represented himself as an owner of San Giorgio when he signed the Commission Contract and

4

admitted to listing himself as an owner and partner on his business card, was prima facie evidence of his ownership. Appellant further argued he had presented evidence that Mia Coffee was a successor company to San Giorgio because Lopez, as an owner, had left San Giorgio to found Mia Coffee, took the Commission Contract and PFG's business with him, and told customers that San Giorgio changed its name to Mia Coffee. Appellant argued the communications that San Giorgio had changed its name to Mia Coffee were evidence of succession. As San Giorgio's successor company, Mia Coffee was responsible for its obligations under the Commission Contract.

The trial court found that Lopez's misrepresentations of ownership were not prima facie proof of ownership. The court also found that the Commission Contract did not bind any of San Giorgio's successors or assignees, so even if Mia Coffee was a successor of San Giorgio, Mia Coffee was not bound by the Commission Contract to pay appellant any commissions. The court also found that because appellant had not shown Lopez was an owner of San Giorgio, appellant also had not shown that Mia Coffee was a successor company. The trial court granted Lopez's motion for a directed verdict for Lopez and Mia Coffee on all counts against them. The court entered final judgment, and this appeal follows.

## Analysis

The standard review for a directed verdict is de novo. *Anchor Prop. & Cas. Ins. Co. v. Trif*, 322 So. 3d 663, 670 (Fla. 4th DCA 2021). When evaluating a directed verdict, "[t]he evidence and all inferences of fact must be viewed 'in the light most favorable to the nonmoving party.'" *Id.* (quoting *Kopel v. Kopel*, 229 So. 3d 812, 819 (Fla. 2017)). A directed verdict should be reversed "if any reasonable view of the evidence could sustain a verdict in favor of the non-moving party." *Id.* (quoting *Meruelo v. Mark Andrew of Palm Beaches, Ltd.*, 12 So. 3d 247, 250 (Fla. 4th DCA 2009)).

### Breach of Contract Counts Against Mia Coffee

Appellant argues that the directed verdict was improper because he presented reasonable evidence that San Giorgio had assigned its food supply agreement with PFG to Mia Coffee. Although appellant did not introduce an assignment agreement between San Giorgio and Mia Coffee, he did introduce the Assumption Agreement between Mia Coffee and PFG.

The Assumption Agreement shows that Mia Coffee assumed San Giorgio's contract with PFG and replaced San Giorgio as PFG's coffee supplier. The Assumption Agreement also refers to San Giorgio and Mia

5

Coffee as "Assignor" and "Assignee," respectively, and states that pursuant to an April 2018 business transaction, Mia Coffee "acquired some or all" or San Giorgio's business, and that Mia Coffee agreed to "assume all or some" of San Giorgio's obligations.

Even when an assignee does not expressly assume an obligation of the assignor, the assignee assumes that obligation if it has actual knowledge of the obligation. *See Cusick v. Condo. Mktg. Consultants, Inc.*, 434 So. 2d 25, 26 (Fla. 3d DCA 1983) ("It is undisputed that Cusick knew his assignor had agreed to pay CMC a $250,000 brokerage commission. Cusick's defense to CMC's suit was that although he had knowledge of the brokerage commission agreement, he never adopted or expressly assumed the obligations of that particular agreement. This defense is, as a matter of law, unavailing."). Here, Mia Coffee knew of San Giorgio's obligation to pay appellant a commission on its sales to PFG, because Lopez—the owner of Mia Coffee—had executed the Commission Contract between appellant and San Giorgio. Thus, like the assignee in *Cusick*, Mia Coffee, through Lopez, knew its assignor had agreed to pay appellant commissions on sales to PFG. Additionally, Mia Coffee, through Lopez, only had a relationship with PFG because of appellant's referral to San Giorgio.

Although Lopez testified that he was not assigned this contract but acquired PFG's business as a competitor, at the directed verdict stage, the evidence must be viewed in the light most favorable to the non-moving party. *Trif*, 322 So. 3d at 670. If the jury rejected Lopez's testimony, the Assumption Agreement was evidence that Mia Coffee was San Giorgio's assignee. Therefore, the trial court erred in granting a directed verdict for Mia Coffee on appellant's claim against Mia Coffee for breach of the Commission Contract.

Lopez argues that because appellant is not a party to, nor an intended beneficiary of, the Assumption Agreement, he cannot use the Assumption Agreement as evidence of any assignment. He relies on *Deutsche Bank Trust Co. Americas as Trustee for Residential Accredit Loans, Inc. v. Harris*, 264 So. 3d 186 (Fla. 4th DCA 2019). *Deutsche Bank*, however, is inapposite. There, we held that a borrower could not argue a bank lacked standing to claim foreclosure based on the bank's failure to comply with a pooling and servicing agreement to which the borrower was not a party. *Id.* at 190. However, *Deutsche Bank* does not stand for the proposition that the agreement cannot constitute evidence of the relationship between parties. In this case, appellant is not claiming that he is entitled to enforce the terms of the Assumption Agreement. He offered the agreement as evidence to support his claim that Mia Coffee had assumed an obligation

to him, because it had assumed obligations with respect to the PFG contract.

Appellant argues as part of his breach of contract claim that Mia Coffee was San Giorgio's successor company, and thus remained bound to pay him commissions on all sales to PFG. A successor company is liable for the liabilities of a predecessor when:

> (1) the successor expressly or impliedly assumes obligations of the predecessor, (2) the transaction is a de facto merger, (3) the successor is a mere continuation of the predecessor, or (4) the transaction is a fraudulent effort to avoid liabilities of the predecessor.

*DFG Grp., LLC v. Stern*, 220 So. 3d 1236, 1238 (Fla. 4th DCA 2017) (quoting *Bernard v. Kee Mfg. Co.*, 409 So. 2d 1047, 1049 (Fla. 1982)).

In *Amjad Munim, M.D., P.A. v. Azar*, 648 So. 2d 145 (Fla. 4th DCA 1994), we set forth the tests for both de facto merger and mere continuation of business:

> A de facto merger occurs where one corporation is absorbed by another, but without compliance with the statutory requirements for a merger. *See Arnold Graphics Indus. v. Independent Agent Ctr.*, 775 F.2d 38 (2d Cir. 1985); *Ladjevardian v. Laidlaw–Coggeshall, Inc.*, 431 F. Supp. 834 (S.D.N.Y. 1977). To find a de facto merger there must be continuity of the selling corporation evidenced by the same management, personnel, assets and physical location; a continuity of the stockholders, accomplished by paying for the acquired corporation with shares of stock; a dissolution of the selling corporation; and assumption of the liabilities. *Arnold Graphics*, 775 F. 2d at 42; *Ladjevardian*, 431 F. Supp. at 838. All of the events, such as dissolution, need not occur at the same time. Thus, in *Knapp v. North Amer. Rockwell Corp.*, 506 F.2d 361, 367 (3d Cir. 1974), *cert. denied*, 421 U.S. 965, 95 S.Ct. 1955, 44 L. Ed. 2d 452 (1975), a de facto merger was found even though the selling corporation was not dissolved until eighteen months after the sale and possessed valuable assets during the interim.

> The imposition of liability upon the successor corporation is grounded upon the notion that no corporation should be permitted to commit a tort or breach a contract and avoid

liability through corporate transformations in form only. *See Western Resources Life Ins. Co. v. Gerhardt,* 553 S.W.2d 783, 786 (Tex. Civ. App. 1977). . . .

The concept of continuation of business arises where the successor corporation is merely a continuation or reincarnation of the predecessor corporation under a different name. *Bud Antle, Inc. v. Eastern Foods, Inc.,* 758 F.2d 1451, 1458 (11th Cir.) (en banc), *reh'g denied,* 765 F.2d 154 (1985). The "purchasing corporation is merely a 'new hat' for the seller, with the same or similar entity or ownership." *Id.* The key element of a continuation is a common identity of the officers, directors and stockholders in the selling and purchasing corporation. *Id.* The change is in form, but not in substance.

*Id.* at 153–54.

As to the facts presented on this issue, Lopez's communications to appellant and to PFG were evidence that he was an officer of San Giorgio, even if Lopez's testimony provided evidence to the contrary. The evidence also showed that Lopez had started a new company—Mia Coffee—which was engaged in the same business, had at least one common officer (Lopez), and serviced some of the same customers, including PFG. The Assumption Agreement also provided evidence that Mia Coffee had acquired some share of San Giorgio's assets and/or business. Thus, a reasonable juror could find that Mia Coffee and San Giorgio executed a de facto merger.

Additionally, Lopez sent two communications—an email to PFG and a letter to Mia Coffee's customers—informing the recipients that San Giorgio was changing its name to Mia Coffee, but business between Mia Coffee and the recipient would otherwise continue as usual. This was evidence that Mia Coffee was continuing San Giorgio's business under a different name, even if Lopez testified that Mia Coffee was a new business. Thus, a reasonable juror could have found that Mia Coffee was a mere continuation of San Giorgio.

At the directed verdict stage, the evidence must be viewed in the light most favorable to the non-moving party. *Trif,* 322 So. 3d at 670. Under that lens, if a reasonable juror found that Lopez's testimony was not credible, a reasonable juror had sufficient evidence to find that Mia Coffee met the successor liability test under the de facto merger or mere

8

continuation theories. The trial court erred in directing a verdict on the breach of contract count.

<u>Remaining Claims against Mia Coffee</u>

We affirm without further comment as to appellant's unjust enrichment claim. Also, because appellant's brief does not address the improper windup of San Giorgio, fraudulent transfer as an independent cause of action, or tortious interference, appellant has waived those issues. *See Polyglycoat Corp. v. Hirsch Distribs., Inc.*, 442 So. 2d 958, 960 (Fla. 4th DCA 1983).

<u>Claims Against Lopez, Individually</u>

"The main body of corporate law is to the effect that directors, officers and stockholders are not liable for corporate acts simply by reason of their official relation to the corporation." *Fulton v. Brancato*, 189 So. 3d 967, 969–70 (Fla. 4th DCA 2016) (quoting *Munder v. Circle One Condo., Inc.*, 596 So. 2d 144, 145 (Fla. 4th DCA 1992)). To hold a corporate officer personally liable, the plaintiff must show that the officer personally benefitted from the corporate act beyond any benefit the corporation received. *Id.* at 970. Here, while appellant provided evidence that both San Giorgio and Mia Coffee had retained monies which appellant claimed should have gone to him as commissions, he did not show that Lopez personally benefitted beyond the amount of withheld commissions. We also agree with the trial court that appellant presented no evidence to hold Lopez personally liable on any of the causes of action raised in appellant's complaint and tried to the jury.

**Conclusion**

The trial court correctly entered a directed verdict in favor of Mia Coffee on appellant's claims, except for the breach of contract counts, and in favor of Lopez, on appellant's claims against him personally. The trial court erred in directing a verdict on the breach of contract counts against Mia Coffee. Appellant presented sufficient evidence to submit to the jury. Thus, we reverse and remand for a new trial on the breach of contract counts against Mia Coffee.

*Affirmed in part, reversed in part, and remanded with instructions.*

GROSS and MAY, JJ., concur.

\*         \*         \*

9

*Not final until disposition of timely filed motion for rehearing.*